## HORTON v. MERCER, Receiver.

(Circuit Court of Appeals, Eighth Circuit. December 2, 1895.)

### No. 658.

1. NATIONAL BANKS—LIABILITY OF STOCKHOLDER—ESTOPPEL TO DENY OWNERSHIP.

Defendant purchased bank stock with his own means, held it for a year, and collected and appropriated all dividends thereon, and, when notified by the bank that the stock stood in his name on the books, gave no notice that he held it in trust for another person, but permitted the bank to deal with him as the beneficial owner, and did not tender the stock to or demand reimbursement from any other person. *Held*, that he was estopped to claim, after the insolvency of the bank, that he held the stock merely as trustee for another.

2. SAME—PURCHASE AS TRUSTEE.

One who purchases stock in a national bank with his own money on the suggestion of another person that the latter would buy such stock as the former "could get hold of," without being under any obligation to convey the stock to the other, is not a trustee within the meaning of Rev. St. § 5152, exempting a person holding stock as a trustee from personal liability as a stockholder.

In Error to the Circuit Court of the United States for the District of Minnesota.

H. C. Eller, for plaintiff in error.

Edmund S. Durment, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This was a suit which was brought by John T. Mercer, as receiver of the Livingston National Bank, against Hiler H. Horton, the plaintiff in error, to recover the sum of

$500, the same being the amount of an assessment upon five shares of the capital stock of the Livingston National Bank that had been duly levied and assessed by an order of the comptroller of the currency. The only question in the case is whether the circuit court erred in directing the jury, at the conclusion of the evidence, to return a verdict against the defendant, Hiler H. Horton, for the full amount of the aforesaid assessment.

The undisputed facts in evidence were substantially as follows: The Livingston National Bank was located at Livingston, Mont. A certificate for the five shares of stock in controversy was originally issued by the bank to Edward Fitzgerald, who resided at St. Paul, Minn. On June 4, 1892, Fitzgerald sold said stock to the defendant, Horton, and delivered the original certificate to the purchaser, after indorsing his name on the back thereof underneath a blank form of assignment which was printed on the back of the certificate. The by-laws of the Livingston National Bank contained a provision that "the stock of this bank shall be assignable and transferable only on the books of this bank, subject to the restrictions and provisions of the banking laws, and a transfer book shall be provided in which all assignments and transfers of the stock shall be made"; but in point of fact no transfer book was kept by the bank, except a stock-certificate book and a stock ledger. Shortly after the stock in question was sold by Fitzgerald to Horton, the following memorandum was made by the assistant cashier of the bank on the stub of the stock-certificate book from which the certificate now in question had been detached: "Transferred to Hiler H. Horton, 6–23–92." But no entry showing the transfer of the stock was made on the stock ledger, nor was the old stock certificate exchanged for a new certificate, according to the usual custom of the bank. On July 1, 1892, and again on January 5, 1893, a dividend check was transmitted by the bank to the defendant, Horton, in a letter of the following import:

"Livingston National Bank.

"Livingston, Montana, July 1, 1892.

"Inclosed please find check No. 7 for $20.00 in payment of semiannual dividend No. 1 on 5 shares of the capital stock of this bank now standing in your name on our books.　　Very truly, yours,

"Alan Maconochie, Asst. Cashier.

"To Hiler H. Horton, Esq., St. Paul, Minn."

The checks inclosed were made payable to the order of Hiler H. Horton. They were subsequently indorsed by him, and the proceeds thereof were appropriated by him to his own use. The defendant continued to hold the stock that had been transferred to him in the manner aforesaid from June, 1892, until some time during the month of July, 1893, when the bank became insolvent. The plaintiff, John T. Mercer, was thereupon appointed receiver of the bank for the purpose of winding up its affairs and liquidating its indebtedness. Subsequently the comptroller of the currency ordered an assessment to be made upon the stockholders of the bank to the amount of $100 per share on each and every share of the capital stock of the association.

To avoid the effect of these undisputed facts, and to show that he was not liable to assessment as a shareholder, the defendant testified, in substance, as follows: That he had purchased the five shares of stock in controversy at the instance of Mr. Carey, who was at the time cashier of the Livingston National Bank. That in February or March, 1892, said Carey had authorized him to buy in any stock of the bank "he could get hold of" in St. Paul, and to draw on him for the purchase money. That thereafter, in June, 1892, he purchased the stock in question of Edward Fitzgerald, and paid him therefor the sum of $475 or $500. That he informed Carey of the purchase some time afterwards, when Carey was casually passing through St. Paul on his way east. That Carey then said to him: "It is all right. Let it run a little. Whenever you want the money, attach a draft to the stock, and send it up, and I will send the money." That he never in fact delivered the stock to Carey, or drew on him, or made a demand for the purchase money, but retained the stock in his possession, and accepted the dividends that were thereafter paid.

It admits of no doubt that the defendant became vested with the full legal title to the five shares of stock in question by the delivery to him of the stock certificate, duly indorsed by the former owner, and by the notation showing and acknowledging the transfer which was subsequently made on the books of the bank. Nothing further was necessary to be done to invest the defendant with all the rights of a stockholder, and to subject him to all the liabilities of a shareholder. It is wholly immaterial that no transfer book was kept by the bank, as its by-laws seem to have required, and that a more formal assignment of the stock was not made on the books of the corporation. The bank had due notice of the transfer, which it recognized as sufficient, both by the memorandum made on the stock-certificate book and by subsequently paying the dividends, as they were declared, to the transferee. In the case of Bank of Commerce v. Bank of Newport, 11 C. C. A. 484, 486, 63 Fed. 898, this court said:

"It is very generally held, and it may be accepted as the established view, that a provision that shares of stock shall be transferable only on the books of the corporation, in person or by attorney, on the surrender of the old certificate properly indorsed, is a provision intended primarily for the benefit of the corporation to enable it to preserve an authentic record of its shareholders, and  *  *  *  to deal safely and intelligently with its members in the matter of paying dividends, giving notice of corporate meetings, and in all other matters relating to the internal affairs and government of the corporation. Incidentally, no doubt, a provision of that kind is also intended to preserve a record of the ownership of stock, to which third parties may resort, when they have occasion to purchase or otherwise deal in the stock of the corporation. It has never been supposed, however, that a stipulation of that nature, whether it is contained in the charter or the by-laws, operates as a prohibition against other modes of transfer. Such provisions are merely cumulative. They provide a particular mode of transfer on which the corporation or its assignee may insist before the shareholder is released from any of his obligations as a member of the company; but, as between the shareholder and his vendee, a good title to stock may doubtless be conveyed by a simple indorsement and delivery of the certificate, or by a bill of sale, or by any other conveyance which is adequate to transfer the title to any other species of personal property."

We also held in the same case that, inasmuch as provisions contained in the charter or by-laws of a corporation regulating the transfer of stock are intended primarily for the benefit of the corporation, it is competent for the corporation to waive compliance therewith, and to admit persons to full membership in the corporation, without a strict observance of prescribed forms; citing in that behalf National Bank v. Watsontown Bank, 105 U. S. 217; Upton v. Burnham, 3 Biss. 431, Fed. Cas. No. 16,798; Insurance Co. v. Smith, 11 Pa. St. 120; American Nat. Bank v. Oriental Mills, 17 R. I. 551, 558, 23 Atl. 795; and some other cases.

It is contended, however, that, although the defendant did hold the legal title to the stock, yet there was some evidence which tended to show, and from which the jury might have found, that he held it merely as trustee for Mr. Carey, and that he was within the protection of section 5152 of the Revised Statutes of the United States, which provides as follows:

"Persons holding stock as executors, administrators, guardians or trustees shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward or person interested in such trust fund would be, if living and competent to act and hold the stock in his own name."

We think that this contention is unsound. The reference in the statute to testators, intestates, wards, etc., shows what class of trustees congress chiefly intended to exempt from liability. The defendant was not a trustee having in his hands funds belonging to the beneficial owner of the stock, out of which the receiver of the bank might have enforced payment of the liability which the law imposes on an owner of stock. He had bought and paid for the stock with his own means. He had held it for a year, and, in the meantime, had collected and appropriated two dividends thereon, without tendering the stock to, or demanding reimbursement from, the person for whose benefit he claims to have purchased it. When he was advised by the bank that the stock stood in his name on the books, he gave no notice that he held it in trust for Mr. Carey, but permitted the bank to deal with himself as the beneficial owner. Under these circumstances, after the lapse of a year, and after the insolvency of the bank, it is too late, in our judgment, to permit the defendant to interpose the defense that he held the stock merely as a trustee, and was not the beneficial owner. In the case of Keyser v. Hitz, 133 U. S. 138, 10 Sup. Ct. 290, where certain stock in a national bank had been transferred to a married woman, as she claimed, without her knowledge or consent, and it appeared that she had indorsed three dividend checks so as to make the same payable to the order of her husband, it was held that she was estopped to deny that she was the owner of the stock, although she claimed to have no recollection of receiving or indorsing the checks, and although she denied positively that she had received the money thereon. The court said, with respect to the indorsement of the dividend checks:

"If she indorsed them, or either of them, she is estopped to say that she did not know their contents, and was not the owner of the shares of stock upon which the dividends were declared; for each check discloses upon its

face that it was payable to her order, and was for dividends on stock standing in her name on the books of the bank."

In the same case it appeared that, after the transfer of the stock upon the books, no new stock certificate had been issued to the defendant; but the court said that:

"The record made of the transfers upon the books of the bank was sufficient, as between her and the bank, to work a change of ownership; and new certificates were not necessary to her becoming the owner of the stock so transferred. Nor can she escape liability by reason of the fact, if such be the fact, that no certificates were issued to her by the German-American Bank."

The doctrine of estoppel, as applied in the case of Keyser v. Hitz, supra, is in itself sufficient to establish the liability of the defendant in the case at bar. But, even if we should concede that the defendant was not estopped to deny that he was a stockholder, still we should not be able to hold that the testimony in the case at bar was sufficient to show that the defendant merely held the stock as a trustee, and was not liable to assessment as a stockholder for that reason. According to the evidence, the cashier of the Livingston National Bank (Mr. Carey) represented to the defendant, about two months prior to the purchase of the stock in controversy, that it was worth $126 per share on the books; that he wanted to buy certain stock that was held in St. Paul, and that he would take and pay for such stock as the defendant "could get hold of." Acting upon this suggestion or information, the five shares of stock belonging to Fitzgerald appear to have been purchased by the defendant. Now, it may be that the stock was bought under such circumstances that the defendant could have compelled Carey to take it and pay for it within a reasonable time, if he had thought proper to do so; but it is not apparent that the defendant was under a legal obligation to transfer the stock to Carey, or that the latter could have compelled him to do so. Carey neither paid nor promised to pay the defendant for his services in negotiating for the purchase of stock; nor did the defendant promise to buy any stock on Carey's account. As the defendant, Horton, purchased the stock with his own money, and was not in Carey's service, and had not obligated himself to purchase stock for Carey's benefit, the most that can be said of the transaction is that the defendant had an election either to hold the stock after he had purchased it as his own, or to sell it to Carey within a reasonable time at such price as he had paid for it. It is evident, we think, that the purchase of the stock under these circumstances did not create the relation of trustee and cestui que trust, within the meaning of section 5152 of the Revised Statutes. That relation does not exist when, as in the present case, the alleged trustee has the right to hold and dispose of the alleged trust property as his own, without liability to account therefor to any third party.

For both of the reasons above indicated,—that is to say, because the defendant was estopped to deny that he was a stockholder, and because the evidence was insufficient to show that he held the stock as a trustee,—no error was committed in directing a verdict for the plaintiff below, and the judgment of the circuit court is therefore affirmed.