### BURT v. BAILEY et al.

(Circuit Court of Appeals, Eighth Circuit. April 6, 1896.)

No. 659.

NATIONAL BANKS—WHO ARE SHAREHOLDERS—ASSESSMENTS—ESTOPPEL.

> Stock of a bank was purchased by defendants, of the president thereof, at a time when there was no overissue, and when the amount purchased was credited to him on the books. At the time, or shortly afterwards, the stock, by his direction, was transferred from his account to theirs, on the stock journal and stock ledger, and new certificates were issued to them. Thereafter they were treated by the bank as the lawful owners of the stock, and were allowed to vote the same and receive dividends thereon. The bank having failed, suit was brought to collect an assessment made against defendants as shareholders. *Held,* that they were estopped from claiming that they were not stockholders, although the president neglected to cancel the old certificates, and afterwards hypothecated part of them, thereby creating an overissue.

Appeal from the Circuit Court of the United States for the District of Kansas.

John C. Nicholson (Samuel R. Peters was with him on brief), for appellant.

J. G. Slonecker (Bennett R. Wheeler and John F. Switzer were with him on brief), for appellees.

Before SANBORN and THAYER, Circuit Judges.

THAYER, Circuit Judge. This is an appeal from a decree entered by the circuit court of the United States for the district of Kansas, dismissing a bill of complaint which was filed by the appellant, Frank I. Burt, as receiver of the First National Bank of Alma, Kan., against the appellees, Joseph H. Bailey, Anna M. Bailey, William W. Speakman, Abagail S. Worrell, and Anna F. Worrell. The action was brought to recover the amount of an assessment that had been levied by the comptroller of the currency on certain shares of stock of the First National Bank of Alma, Kan., which stock, as the bill charged, belonged to the several defendants when the bank became insolvent and a receiver of its affairs was appointed. The defendants filed separate answers to the bill of complaint, but the defense interposed by each defendant was the same, and to the following effect: They averred, in substance, that they, respectively, bought from the First National Bank of Alma, in the years 1888 and the early part of 1889, the number of shares of stock which they were charged to own, and that the bank issued to them, respectively, certificates of stock for the amount of their several purchases, but that at the time such stock was purchased by them said bank had already issued to other persons the full amount of stock which it was entitled to issue under

its charter, and that it had received payment therefor, and that none of the certificates for such outstanding stock so issued to third parties were returned to the bank and canceled when certificates were issued to the several defendants. In view of the premises, the defendants claimed that the stock by them held was part of an over-issue, and for that reason was void stock, within the rule announced in Scovill v. Thayer, 105 U. S. 143. Whether this defense was sustained by the proof is the principal question to be considered on this appeal.

The testimony contained in the record establishes, without much contradiction, the following facts: John F. Limerick was the president of the First National Bank of Alma, Kan. (hereafter termed the "Bank"), from the date of its incorporation, on August 3, 1887, until it suspended business, on November 10, 1890. A portion of that time his wife, Mary Limerick, acted as assistant cashier. The bank was organized with a capital of $50,000, the shares being $100 each; but the capital was increased on August 21, 1888, to the sum of $75,000, which was divided into 750 shares of $100 each. On December 22, 1888, said John F. Limerick stood charged on the stock ledger of the bank as the owner of stock to the amount of 275 shares, and there is no evidence in the record that he was not the owner of that amount of stock at that time. The stock journal and the stock ledger that were kept by the bank show that on that day, and on the succeeding 2d day of January, 1889, 25 shares of the stock thus owned by said Limerick were by him sold and charged to the defendants Joseph H. Bailey and Anna M. Bailey, his wife. Twenty shares were thus sold and charged on the stock ledger to Joseph H. Bailey, and the remaining five shares to his wife. The stock ledger and stock journal show similar sales of stock by said John F. Limerick to the following named defendants on the following days, to wit: To Anna F. Worrell, 10 shares on February 10, 1889; to William W. Speakman and to Abagail S. Worrell, 10 shares each on April 11, 1889; to Anna M. Bailey, 10 shares on June 15, 1889. At all of these dates, John F. Limerick appears to have been the owner of stock largely in excess of the amount sold and transferred from his account to the account of the several defendants. The purchases made by the defendants were negotiated by correspondence, which was conducted by Limerick, either as president of the bank, or in his individual capacity; and stock certificates duly executed by him, as president, under the seal of the bank, were transmitted to the defendants at the dates of their several purchases. Subsequent to the aforesaid transactions, John F. Limerick, as president of the bank, made a sworn return to the comptroller of the currency, pursuant to section 5210 of the Revised Statutes, showing who were stockholders of the bank on July 1, 1889. In such return the defendants were reported as holding stock to the amount above stated. The defendants Joseph H. Bailey and wife voted their stock at a stockholders' meeting held in January, 1889; and, prior to the suspension of the bank, all of the defendants appear to have received dividends on the stock that they had acquired in the manner aforesaid. The stock-certificate book, which was introduced in evidence on the trial below, showed that

22 stock certificates, representing stock to the amount of 692 shares, were originally issued to John F. Limerick. The stubs of 15 of these certificates, representing stock to the amount of 447 shares, were indorsed "Canceled," although the old certificates were not found attached to the stubs. The stubs that were thus indorsed bore the following numbers, to wit: 14 to 22, both inclusive; 24 to 28, both inclusive; and No. 34. Whether some of these stubs were thus indorsed "Canceled" contemporaneously with the sale of stock to the several defendants was not proven by the testimony. Such may have been, and probably was, the fact. At least, there is nothing to show the contrary. The certificates that were issued to the defendants when they, respectively, purchased their stock, bore the following numbers, to wit: Nos. 103, 105, 108, 115, 116, 122; all of which certificates may have been issued in lieu of some of the certificates marked "Canceled" on the stock-certificate book. On June 6, 1889, John F. Limerick hypothecated stock certificate No. 55, for 35 shares of stock in the First National Bank of Alma, to secure a note in the sum of $2,500 that was executed by himself. Between July 8, 1889, and November 15, 1889, he hypothecated 12 other stock certificates, representing altogether 420 shares of stock, to secure other notes which he had either executed or indorsed. The 12 certificates thus hypothecated bore the following numbers, to wit: 19, 21, 22, 25, 27, 32, 33, 35, 36, 40, 235, and 240. It appears that the number of stock certificates that were outstanding when the bank failed, including the 13 certificates thus held as collateral, which were then outstanding, represented more stock than the bank was entitled to issue; but it admits of no doubt, under the testimony, that when the last sale of stock was made to the defendants, to wit, on June 15, 1889, Limerick had only hypothecated 35 shares of stock up to that time, and that he still owned, and stood credited on the stock journal and stock ledger with, 125 shares of stock over and above the 35 shares which he had then hypothecated.

The foregoing facts—and they are, substantially, all that the record discloses—are not sufficient, in our opinion, to warrant the conclusion that the stock held by the defendants is overissued stock, and for that reason is void and unassessable. The burden of showing that the bank had issued more stock than was authorized by its charter when certificates were issued to the defendants clearly rests upon them; and the evidence, we think, wholly failed to establish that contention. The excessive issue complained of seems to have been occasioned by the hypothecation, subsequent to July 1, 1889, of old certificates that were in the custody of the president of the bank. The stock that was bought by the defendants was stock that was owned by John F. Limerick, with which he stood credited on the books of the bank, and there had been no overissue when the several purchases were made. At or about the time when the stock was purchased, it was transferred, by direction of John F. Limerick, on the stock journal and stock ledger that appear to have been kept by the bank, from his account to the account of the several defendants; and they were thereafter treated by the bank as the lawful

owners thereof, and were accorded all the rights and privileges of shareholders, including the right to vote the stock and to participate in the distribution of net profits. Under these 'circumstances, it is no concern of the defendants whether the president of the bank violated his duty, in neglecting to cancel the old certificates representing the stock that he had sold to the defendants, and had caused to be transferred to their account on the stock journal and stock ledger. The certificates in question were in his possession. The defendants were not present when the new certificates were executed and issued. It was the duty of the vendor of the stock, as president of the bank, to see that the old certificates were duly canceled; and if he failed to discharge his duty in that respect, and subsequently negotiated a part of the old certificates, the defendants cannot be made to suffer for his misdeeds. As between the bank and the defendants, the former is clearly estopped from asserting that the defendants are not stockholders, and this estoppel is mutual. Bank of Commerce v. Bank of Newport, 27 U. S. App. 486, 11 C. C. A. 484, 63 Fed. 898, and cases there cited; National Bank v. Watsontown Bank, 105 U. S. 217; Horton v. Mercer, 18 C. C. A. 18, 71 Fed. 153. Nor is it any concern of these defendants that the holders of some of the certificates that were hypothecated by Limerick in the summer of 1889, to secure his notes, may have received the certificates under such circumstances as will enable them to maintain an action against the bank for damages, under the doctrine announced in Bank v. Lanier, 11 Wall. 369. This is not a controversy between the defendants and the holders of the hypothecated certificates, as to who has the superior title to certain shares of stock; but it is a controversy between the bank, represented by its receiver, and the defendants, as to whether the latter were stockholders when the former became insolvent. The bank is not disputing the defendant's title to the stock, and, for the reasons already stated, it would be estopped from so doing if it made the attempt. Nor is any third party asserting a superior title to the stock, nor is it probable that a claim of that kind will ever be asserted. Moreover, the defendants, by their several answers, only attempted to avoid liability on the ground that the stock by them held was part of an overissue; and that defense, as we have seen, was not established by the evidence. The decree of the circuit court will accordingly be reversed, and the case will be remanded to that court, with directions to enter a decree in favor of Frank I. Burt, as receiver of the First National Bank of Alma, and against the several defendants, for the respective amounts claimed in the bill of complaint.