# GUTHRIE et al. vs. QUINN.

[BILL IN EQUITY TO FORECLOSE MORTGAGE, &C.]

1. *Estoppel; what will work.*—If Q. is about to sell his horse to G., and while the negotiation is pending, he goes to L. and informs him about the trade, and asks his advice, and L. tells him that G. is cultivating a crop of corn and cotton on his lands, and that he is entitled to one-half of such crop, and if he trades it is all right, and advises Q. to retain a lien on the horse, and then Q. goes back to G. and sells his horse to him on credit, and takes his note for the price of such horse, and a mortgage on the horse and on G.'s crop, to secure the payment of the note, and the mortgage is properly recorded, L., if he does not at the time he is consulted as aforesaid, disclose to Q. his claim upon the crop of G., will not be permitted afterwards to come in with his claim on said crop and defeat the claim of Q. under his mortgage ; he is estopped.

2. *Mortgage; such as in this case, may be enforced in equity.*—Such a mortgage may be enforced and foreclosed in equity, on a bill filed by Q. against G. and L.

3. *Same ; weight of evidence.*—In such a suit, if L.'s answer is put in without oath, and supported by his own deposition, it may be overturned by the depositions of Q. and one other witness. In such a case the answer of L. is entitled to no more weight as evidence than the bill.

APPEAL from the Chancery Court of Montgomery.
Heard before the Hon. A. C. FELDER.

The opinion contains all the material facts of the case.

WALKER, MURPHY & WINTER, for appellants.—1. The court erred in rendering the decree for the complainant, because the bill contains no equity. The complainant's debt is strictly legal. He has no right, independent of statutory authority, to come into equity, unless he stands as a creditor with a lien, or having exhausted his remedy at law. See the authorities collected.—Shepherd's Digest, 236 ; Reavis' Digest, 251.

The equity of the bill can not be maintained on the au-
36

thority of § 3406 or 3408, because the case is neither upon an equitable demand, nor to subject equitable effects. But it is plainly not maintainable upon the last of those sections, because the attachment is not issued either against equitable effects, or a debt or pecuniary demand.—*Smith v. Moore*, 36 Ala. 76 ; *McKenzie v. Bentley*, 30 Ala. 137.

2. The only other ground of equity which can be pretended is, that it is a proceeding to foreclose a mortgage. It is shown by the answer and the evidence, that the defendant, Lewis, had a claim on the cotton superior to, and older than that of the complainants, for the following reasons : 1. The relation of partners existed between Lewis and Guthrie, and in that relation the debt was contracted to defendant, and partnership liabilities have a right of satisfaction out of partnership assets prior to an individual creditor. The defendant, Lewis, had an older mortgage than that of defendant.

The appellee's counsel seeks to avoid the force of the past, that Lewis had the older and better title, by invoking the doctrine of estoppel *en pais*. The precise averment of the complainants' bill found in the third paragraph is, that Lewis, when consulted by Quinn about the sale of a horse to Guthrie, said, "that Guthrie would be entitled to half the crop he was making, and it would be all right, but he advised orator to retain a lien on the horse." The evidence contains something more, but the complainant must recover it, if at all, on his allegations.

Now, so much of this statement as asserts that Guthrie would be entitled to half the crop he was making, was strictly true. He was, in fact, entitled to it, notwithstanding it was liable for advances made to him, just as the owner of a tract of land is entitled to it, notwithstanding there may be a judgment against him. If it be said that Lewis ought to have disclosed his lien, the reply is, that there is nothing in the bill charging an estoppel by silence—that is, by a failure to speak when he ought to have spoken.

The statement that it would be all right, was obviously but an opinion. It is only the expression of the speaker's opinion, from what he knew, that the debt, if contracted by

the sale of the horse, would be paid. But the opinion was evidently expressed with some doubt, as is shown in his recommendation that a lien on the horse should be taken.

The statement was in a mere casual conversation; it was not made to influence the complainant. It was given only in response to a request for information, and cannot amount to an estoppel. This will be made clear by an examination of the following authorities : *Otis v. Sill*, 8 Barbour, S. C. R. (N. Y.) 102; *Carpenter v. Stillwell*, 12 Barb. S. C. R. 128 ; *Edmonson v. Montague*, 14 Ala. 370 ; *Maury v. Coleman*, 24 Ala. 381; *Jelks v. McRae*, 25 Ala. 440 ; *Smith v. Mundy*, 18 Ala. 128 ; *Maury v. Coleman*, 24 Ala. 381.

The supreme court of this State has gone to the utmost verge of the law in upholding estoppels, but it is submitted that no court has gone as far as the court is asked to go in this case. The extreme case of *Lanier v. Hill*, 25 Ala. 554 will not sustain the estoppel in this case. There the maker of a note promised to pay it, if purchased, and made the promise for the purpose of inducing the purchase.

STONE, CLOPTON & CLANTON, *contra.*—Appellee, C. H. Quinn, makes the following points :

1. The main point of the bill is, that Lewis, when appealed to by Quinn, stated that Guthrie would be entitled to half the crop, and did not disclose to him, Quinn, any claims, lien, or equities which he, Lewis, had in, on, or to the half crop belonging to Guthrie ; and relying on this representation, without any knowledge to the contrary, Quinn parted with his property to Guthrie, taking a lien on Guthrie's half interest in the crop. This averment to the bill is proved in every particular, by the testimony of Quinn and Caldwell ; and the only contradictory proof is the deposition of D. H. Lewis. Sworn answer from Lewis had been dispensed with, and this presents the familiar case of two witnesses on one side, whose testimony is clear and full, and only one on the other. Moreover, Lewis' testimony is very unsatisfactory. The case made by the bill, is fully sustained by the proof.

2. The facts being fully proved, defendant, Lewis, by his declarations to Quinn—declarations which Quinn acted on—estopped himself from asserting his own claim or right to the property, to the extent of Quinn's claim. The chancellor followed the exact rule of the law.—*Stone v. Britton*, 22 Ala. 543, and authorities cited by the court and by counsel.

3. We need not stop to inquire whether Lewis and Guthrie were partners. That does not vary the case. Even if Lewis owned the whole title, and Guthrie none, the answer of Lewis, when appealed to by Quinn, estops him from setting up such title against Quinn, who acquired his right on the strength of what Lewis said, and in utter ignorance that what Lewis said was untrue. Quinn parted with his property, relying on the truth of Lewis' statement, and this makes the estoppel complete.— *McCravey v. Remson*, 19 Ala. 430 ; *Dezell v. Odell*, 3 Hill, (N. Y.) 215 ; *Goslin v. Bivine*, 7 Bing. 339; *State v. Adams*, 21 Ala. 534.

4. Quinn, by taking the mortgage or lien, became a *bona fide* purchaser. He parted with his property at the time, and on the faith of the security.— *Wells v. Morrow*, 38 Ala. p. 129, and authorities cited.

PETERS, J.—The record in this case shows that the defendant in error, said Quinn, on the 16th day of November, 1867, filed his bill in the chancery court of Montgomery county, Alabama, against R. M. Guthrie, Dixon H. Lewis, and Lehman, Durr & Co., in which he alleges, that said Guthrie, on the 21st day of August, 1867, purchased a horse of him for the sum of one hundred and ninety-five dollars, to be paid on or before the 1st day of November, then next following ; that in order to secure the payment of said sum of money, said Guthrie gave him a mortgage or lien on said horse, and his growing crop ; that this mortgage was duly executed and recorded as required by law ; that at the time said horse was sold as aforesaid, and before the trade was consummated, appellee had an interview with said Lewis in regard to said trade, and that he then informed said Lewis of the proposed sale of said

Guthrie et al. v. Quinn.

horse to said Guthrie, when said Lewis stated that "Guthrie would be entitled to half the crop he was making, and it would be all right," but Lewis "advised him to retain a lien on the horse;" that at the time Lewis gave this advice, and made these declarations, he had full knowledge of the sale about to be made. The crop of Guthrie, above referred to, was growing on the lands of said Lewis, but he did not then inform Quinn that he, Lewis, had any claim to said crop or interest therein. In two or three weeks after the sale, Quinn gave Lewis actual notice of his mortgage on Guthrie's crop. About three days before the filing of the bill, and after Guthrie had absconded and carried off the horse, Lewis, for the first time, informed appellee that he had a claim on Guthrie's crop, which had been mortgaged to appellee, as aforesaid. The bill also charges that Guthrie had absconded and carried off the horse, so that he could not be traced or found, and that this had occurred within the six days next before the filing of the bill, and that appellee had no other means of collecting his debt, save by seizure of the half interest of said Guthrie in said crop, which consisted of cotton and corn, which were in the possession of said Lewis, and that said Lewis was insolvent ; that a part of said crop was ungathered in the field ; that a part of said crop had been ginned and packed, and that a part was un-ginned ; that as much as eleven bales had been ginned and packed, which were estimated at five hundred pounds each ; that Guthrie's share thereof, would be about nine bales, and his share of the corn, about two hundred bush-els ; that the eleven bales of cotton aforesaid, had been carried to the city of Montgomery, and stored in the ware-house of said Lehman, Durr & Co. Appellee also charges that said Lewis had, within two or three days before the filing of the bill in this case, caused an attachment, in his own favor, to be sued out against the estate of said Guth-rie, and had the same levied on the interest of said Guthrie in said crop ; and that appellee had no means of securing the payment of his said debt, except by decree of the court of chancery enforcing his mortgage on said crop.

The parties defendant were all brought into the court

below. Lewis alone answered the bill, and set up a claim against said Guthrie for a greater sum than the value of his interest in the crop; he claimed that he was a partner with Guthrie in making the crop, and had made him advances for the purposes of making the crop, as such partner, to the amount of five or six hundred dollars, and that he was entitled to a lien on said crop until these advances were repaid. He denied any notice or knowledge of the trade between Quinn and Guthrie about the horse, or of the mortgage in favor of Quinn, except what is implied from its record in the court of probate; and denied that he had told Quinn, when the negotiation about the sale of the horse was going on, that Guthrie was entitled to onehalf the crop, and if he traded with him, it would be all right. He admits that said eleven bales of cotton were carried to Montgomery and stored in the warehouse of Stickney & Co., and that they had been sold by consent of himself and Quinn for $265.36, the one-half of which was the interest of said Guthrie therein. These funds were left in the keeping of Glaze & Raleigh, by consent, to abide the decision of this case. He also admits that there was some other cotton of said crop, which had been sold by consent, and that the proceeds were in the hands of the sheriff of Montgomery county, subject to the determination of this suit. Lewis also demurs to the bill for want of equity. Lewis, and Lehman, Durr & Co., were required to answer the bill, without oath; and Lewis' answer is made without oath. The cause was heard before the chancellor on the bill, exhibits, and depositions of Quinn and Caldwell, on the part of complainant, and on the answer and deposition of Lewis, on the part of the defendants.

The chancellor decreed that Guthrie pay the complainant $211.60 and costs; and that this amount be paid out of the proceeds of the cotton and other crops seized in this cause, and sold by consent, and that after the payment of the costs and amount of this decree, with interest from the date of the report, the balance be paid to said Lewis. And in case the proceeds of said crop fall short of paying appellee's demand and costs, then, that said Lewis pay the balance of the costs so remaining unpaid, out of his share

of the proceeds of said crop; and in default thereof, that execution issue. And the execution of the decree was suspended until appellee gave the bond required by § 3401 of the Revised Code; and the register was ordered to give the notice required by § 3397 of said Code.

There can be no doubt as to the complainant's equity in this case. There is no doctrine of equity more familiar than the right of a mortgagee to go into chancery to enforce the foreclosure of his mortgage, or his lien, in the nature of a mortgage. The surprise would be, that it is doubted rather than that it does not exist.—2 Story Eq. Ch. XXVII, *ubique*; 1 *ib.* § 506, *et seq.*; *Ross v. Ross*, 21 Ala. 322; *Alabama Life Insurance and Trust Co. v. Pettway*, 24 Ala. 544; *Cullum v. Br. Bk. Mobile*, 23 Ala. 797; *Boyd v. Beck*, 29 Ala. 703. Then the demurrer in this case was without sufficient grounds, and properly overruled.

The answer of the defendant, Lewis, in the court below, is put in without oath. This takes from it the force that it would otherwise have been entitled to, as evidence in the cause, on behalf of the defendant. In such case it merely puts the cause at issue, and is of no more weight as evidence than the bill.—Rev. Code, § 3328; *Rainey v. Rainey*, 35 Ala. 282. Then it did not require the testimony of two witnesses to overturn the answer and deposition of Lewis. His denials are fully disproved by the depositions of Quinn and Caldwell. Quinn applied to him for advice when he was about to sell his horse to Guthrie, and Lewis cautioned him not to sell without retaining a lien on the horse, and informed him that Guthrie would be entitled to one-half the crop he was making on his (Lewis') land, and that "it would be all right." This language could not have been reasonably construed to mean less than that the crop would be liable to aid in paying for the horse. The language was addressed to Quinn. It could not be all right to him, if the cotton and corn that Guthrie was making on Lewis' lands was not liable to the payment of the amount about to be contracted for the horse. Nothing less than this would make it *all right* with Quinn. If Lewis then had claims against Guthrie for which the crop was liable, it was his duty to have disclosed them. If he failed to do this,

he waived his right.   This is the doctrine of this court as laid in down *Steele v. Adams*, 21 Ala. 534.  And we do not feel that the testimony in this case authorizes us to depart from it.   Lewis' answer and deposition is overturned by the bill and the depositions of Quinn and Caldwell.—*McCravey v. Remson*, 19 Ala. 430 ; *Wells v. Morrow*, 38 Ala. 125 ; also, 2 Dev. 179 ; 19 Wend. 557 ; 11 New Hamp. 201 ; 3 Barb. 222 ; 6 John. Ch. R. 166 ; 1 John. Ch. 354.

The decree in the court below is affirmed at the costs of the appellant, Lewis, in this court and the court below, and his securities on his appeal bond.