KUHN v. MORRISON et al.

(Circuit Court of Appeals, Fifth Circuit. December 15, 1896.)

No. 539.

Estoppel in Pais—Mortgages.

    One G. owned two tracts of land, of 100 and 75 acres, respectively. He sold the 100-acre tract to one C., and took a mortgage for part of the purchase money. Afterwards he sold the 75-acre tract, and both tracts finally came into the hands of one M.; and, he being unable to make the required payments for the land, G. instituted suits against the various parties liable. M. then entered into negotiations with the plaintiff for a loan, and plaintiff agreed to lend $10,000 if secured by a first mortgage on the two tracts of land. G. knew of these negotiations, and of the plaintiff's requirement of a

first mortgage. He was present at the consummation of the loan, and indorsed upon the mortgage, in which M. covenanted that he was seised of the land, and that it was unincumbered, an acknowledgment of the receipt of $5,389.08 on account of his claims, and a release of his liens on the 75-acre tract, and he took the money. None of the parties, except G., knew of the mortgage on the 100-acre tract, although it was recorded, and G. did not disclose its existence when the mortgage was made to plaintiff; but, when plaintiff sought to foreclose his mortgage, G. set up the mortgage to him on the 100-acre tract as a prior lien. *Held*, that G. was estopped by his silence, when permitting plaintiff to take his mortgage, to set up the mortgage to him, as against plaintiff.

Appeal from the Circuit Court of the United States for the Northern District of Georgia.

This was a suit by William S. Kuhn, trustee, against Robert Morrison, Carrie P. Morrison, S. E. Green, Edward Scott, Moses H. Clift, J. T. Williams, John X. Dickert, and W. T. Page, for the foreclosure of a mortgage. A demurrer to the bill was sustained in part, and, on final hearing, a decree was made for the foreclosure of the mortgage, subject to a lien held by defendant Green. 75 Fed. 81.

Foster V. Brown and Frank Spurlock, for appellant.

W. H. Payne, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and MAXEY, District Judge.

McCORMICK, Circuit Judge. William S. Kuhn, trustee, the appellant, brought suit against Robert Morrison and others, appellees, to foreclose a mortgage on 175 acres of land in Catoosa county, Ga., executed by the appellee Morrison and others, to secure the payment of a note for $10,000. The land consisted of two adjoining tracts, one containing 100 acres, and the other 75 acres. Together they were known as the "Spring Lake Place," which was only a few miles from the city of Chattanooga. There was a lake on the 100-acre tract of land, and a small mill on the 75-acre tract of land, which was propelled by water from the lake. The Spring Lake place had belonged to the father of appellee Samuel E. Green. In January, 1887, after the death of their father, Samuel E. Green and his co-heirs sold the 100-acre tract of land to M. L. Chapman, trustee for himself, Robert Morrison, W. E. Baskette, John A. Hart, and M. and H. W. Grant, partly for cash, but mostly on a credit, for which credit payment three separate notes were given. The deed retained a vendor's lien. It bore date January 13, 1887. On January 24th, M. L. Chapman executed to Green a mortgage upon the land, to secure the three notes given for the deferred payments on the purchase money. Subsequently, Green sold the 75-acre tract, partly for cash, and partly on credit, and, by dealings between the different vendees, the tracts both came into the control and ownership of appellee Robert Morrison. Without having taken any steps to foreclose the mortgage lien on the 100-acre tract, Green filed his bill in the chancery court of the state of Tennessee, against all the parties claiming under his deed to Chapman, and praying for an injunction against them to restrain

them from selling the land in Catoosa county, Ga., until the purchase money was fully paid, alleging in that bill that, if they made such sale, their vendees would take title, to the exclusion of his lien for the purchase money. After the maturity of the purchase money for the 75-acre tract, the amount remaining unpaid was put in judgment in Catoosa county, Ga., and judgment was obtained in the suits in Tennessee against the makers of the notes, for the payment of all of which appellee Robert Morrison had become bound. An execution on the Tennessee judgments was put in the hands of the proper sheriff, and was being pressed against all of the makers of the notes for the unpaid purchase money of the 100-acre tract. Robert Morrison's affairs had fallen into embarrassment, and he found himself unable to protect those whose obligations he had assumed. In this state of affairs, he opened negotiations with the appellant for a sale of the Spring Lake place, pending which the appellant agreed to loan him $10,000 on the 175 acres of land, provided he could get a first mortgage thereon, and also took an option to purchase the land if, after a full examination of the capacity of the spring to furnish water, he should desire to purchase it. The testimony is conflicting as to details, but it appears that Green had notice of the pendency of some negotiations between Kuhn and Morrison, and that he gave more or less attention to its progress, and that he consented that in case the loan was effected, and the money was turned over to him, he would suspend for a specified time the enforcement of the execution against the others who were bound in the Tennessee judgments. There were different parties who claimed some interest in this land besides Morrison, and there had been some payments made by different ones to Green on the judgment debts. Some delay was experienced in adjusting the figures, and ascertaining the balance that was due, and the proportions that had been paid.

The mortgage was drawn up to be executed by Morrison and the other parties in interest, which recited upon its face, among other things, as follows:

"And we, Robert Morrison and Edward Scott, do covenant with said W. S. Kuhn, trustee, and his successor or successors in trust, and bind ourselves and our heirs and representatives, that we are lawfully seised of said lands, and have a good right to convey them; that they are unincumbered; and that we will warrant and forever defend the title thereto."

Various interviews and conversations are alluded to in detail in the testimony, in which Green either participated, or at which he was present; and, on the day when the loan was concluded and the money paid, Wingfield (the representative of the plaintiff), W. L. Eakin (who prepared the mortgage), Robert Morrison (who was the principal debtor), the appellee Samuel E. Green, and perhaps others, were present in the lawyer's office, and the transaction was pretty generally discussed between the other parties present, and in the hearing of Green, who said nothing or little, bearing upon it. It is clear from the testimony that all of the other parties understood that the plaintiff was to loan his money upon a first mortgage on the land, and that he would not part with it except on

that basis. Language of this import was uttered in the hearing of Green, and all the conduct of the parties on the occasion expressed the same views.

Before the payment of the money, Green executed and acknowledged his signature to the following memorandum, indorsed on the mortgage above mentioned:

"I, Samuel E. Green, do hereby acknowledge the receipt of five thousand and three hundred and eighty-nine eight-hundredths dollars, in full satisfaction of a judgment I recovered in the superior court for the county of Catoosa, in the state of Georgia, together with costs in said cause against Edward Scott and Robt. Morrison, and agree that the lien I now have on the second tract of land described in the foregoing mortgage, and containing seventy-five acres, more or less, and situated in Catoosa county, Georgia, is thereby discharged.

"Witness my hand and seal, this 4th day of March, 1892.

"This payment includes a note dated the 10th day of December, 1888, due at three years, executed by Edward Scott and Robert Morrison, for the sum of two thousand and three hundred and thirty-three and 33⅓ dollars, payable to us in part consideration of the second tract of land conveyed in the foregoing mortgage, to secure which note and other notes a mortgage was executed to me on said second tract of land described in said mortgage by Robert Morrison and Edward Scott, which is satisfied and discharged by the payment, and is in full payment of all the consideration for said tract of land to the said Robert Morrison and Edward Scott, and warrant the title thereto against the lawful claims of all persons claiming by or through me by virtue of said mortgage or any other mortgage, and not further or otherwise.

"In testimony whereof, I have hereunto subscribed my name, and affixed my seal, this, the 4th day of March, 1892.        S. E. Green, Executor."

The remainder of the $10,000 was paid to Green on the Tennessee judgments. He took from Morrison a lien on all his interest in the option that was provided for in the instrument of mortgage, and from other parties bound in the Tennessee judgments a stipulation that the extension of time on those judgments should not affect their lien or the levies that had been made thereunder. It clearly appears that at this time neither the plaintiff, nor any representative of his, nor Robert Morrison, had any knowledge of the existence of the mortgage given by Chapman to Green on the 100-acre tract, and it does not appear that Green made any mention of that mortgage to any of the parties interested in these recent transactions until about the time of the maturity of the $10,000 loan, and when he had reason to believe that the plaintiff would not accept the option to purchase, above mentioned. The mortgage from Chapman to Green had been duly recorded in Catoosa county, Ga., and on the 17th day of February, 1893, Green filed his petition in the superior court of that county against Robert Morrison, M. L. Chapman, W. E. Baskette, M. Grant, and H. W. Grant, to enforce that mortgage.

In this suit the appellant contends that the conduct of Green at the time of the negotiations between appellant and Morrison for the $10,000 loan misled the appellant and his agents, to their hurt, and to Green's manifest advantage; and that, having been silent then, when he should have spoken, he cannot now be heard to claim, as against appellant, any right under the Chapman mortgage. The learned chancellor who heard this cause at the circuit went through the evidence with care, but did not feel justified in adjudging an

estoppel against Green as to the priority of his mortgage. He expressed some doubt on this branch of the case, but, considering that estoppels are not favored by the courts, he passed his decree foreclosing the appellant's mortgage, subject to the lien of Green's prior mortgage on the 100-acre tract. We find from the evidence that the appellee Morrison was indebted to Green in large amounts, which Green had put in judgment; that he was using intelligent diligence to obtain the satisfaction of these judgments; that he had such interviews, conversations, and dealings with the parties pending the negotiation for, and at the consummation of, this loan as charged him with notice that his debtor, Morrison, was obtaining the loan on what purported to be a first mortgage on both the 75-acre tract and the 100-acre tract described in the mortgage; that he was present when the appellant parted with his money, the whole of which he (Green) received; that what occurred and what was said in his presence and in his hearing touching this transaction, in which he had so direct and comprehensive an interest, was sufficient to charge any person of ordinary intelligence with the knowledge that all of the participants in the transaction, except himself, believed that the release which he indorsed on the mortgage cleared the land of all previous incumbrance; that he knew he held the Chapman mortgage on the 100-acre tract; and he had reason to believe that, if the appellant or his representatives had notice of that fact, the appellant would not make the loan. In this state of the case, Green kept silent, and got the appellant's $10,000.

We need not halt at the word "estoppel," or, if it is an odious term, we need not use it. The common conscience, untrammeled by technical refinements, will not tolerate such silence as Green kept under the circumstances stated. The first principles of fair dealing charged him with the duty of giving the parties notice, before he took their money, that he held an unsatisfied mortgage on the 100-acre tract of land. The fact that his mortgage was duly recorded in the county where the land is situated did not relieve him from this obligation; nor did the fact (if such was the fact, about which there is direct and sharp conflict in the testimony) that the lawyer who drew the mortgage from Morrison to Kuhn, and who was then advising Kuhn's agent as to the validity of the instrument as a first mortgage on all the land, had, at a time long previous, been informed and had knowledge of the existence of the Chapman mortgage, excuse Green's silence. When, under such circumstances, one hides his claim in silence, to his own advantage, and to the hurt of another, acting plainly in ignorance of it, courts of justice, at law or in equity, will not afterwards admit the claim against the person thus injured. The court will require satisfactory evidence that the claimant had knowledge of his right to claim, and that he had good reason to believe that the other person did not then have information of the claim of right, and was about to act on the belief that no such adverse right or claim did exist, and was taking, or about to take, such action as he would not take if he had any actual knowledge of the existence of the adverse interest. A preponder-

ance of evidence is required to support an affirmative finding on any issue of fact.

The case of Brown v. Davis, 10 C. C. A. 532, 62 Fed. 519, was in some of its features and issues similar to the one we are now deciding. In that case the complainant contended that when the respondent, knowing the purpose of the complainant to secure a prior lien on the property, received the amount of his vendor's lien, it was his duty to make known the fact that he held also a duly-recorded deed of trust on the land, which would be prior in rank to the complainant's mortgage, and that, by his silence under the circumstances shown in that case, the respondent was estopped in equity from asserting his trust deed as against the trust deed taken by the complainant, on which this court said: "This view of the case is strongly supported by the authorities, although there are some qualifications;" and, further on in the opinion, said: "If this were a case in which the complainant had come into court with a fair presentation of the facts, evincing a disposition to assert his equities, without injury to others, and had presented the matter of estoppel upon the real facts of the case as above stated, we are inclined to the opinion that he would not have been turned out of court without consideration of his right to assert the estoppel in question."

We think our views are supported by Pickard v. Sears, 33 E. C. L. 257; Niven v. Belknap, 2 Johns. 573; Chapman v. Chapman, 59 Pa. St. 214; and by the text and citations in Bigelow, Estop. (4th Ed.) c. 18; and by the text and citations in Herm. Estop. & Res Jud. c. 12.

We conclude that the portion of the decree of the circuit court complained of on this appeal should be reversed; and it is ordered that so much of the decree in the circuit court as adjudged that the appellant have foreclosure of his mortgage, subject and subordinate to the lien of the mortgage held by S. E. Green on the 100-acre tract, is reversed, and this cause is remanded to the circuit court, with the direction to enter its decree in accordance with the views expressed in this opinion.