## MODERN WOODMEN OF AMERICA v. UNION NAT. BANK OF OMAHA.

(Circuit Court of Appeals, Eighth Circuit.   April 11, 1901.)

No. 1,458.

**1. APPEAL—REVIEW—INSTRUCTIONS.**

When a peremptory instruction is given in favor of either party, the only question with respect to the charge which is open for consideration by an appellate court is whether such direction to find for one party or the other, when considered in the light of the pleadings and all the evidence, was right. Assignments of error as to other matters contained in the charge are in such case immaterial.

**2. BANKS—CERTIFICATES OF DEPOSIT—ESSENTIALS OF INSTRUMENT TO CREATE ACTIONABLE OBLIGATION.**

An instrument executed by the cashier of a bank, which merely certifies that on a prior date named a party had a stated sum on deposit to its credit in the bank, but which contains no words of negotiability or promise to pay, is not a certificate of deposit, or an obligation of the bank upon which an action can be maintained, but is merely evidentiary in character.

**3. SAME—ISSUANCE OF CERTIFICATE SHOWING FICTITIOUS DEPOSIT—ESTOPPEL.**

Z. was head banker of plaintiff, which was an incorporated insurance order, and as such had the custody of its funds. After the expiration of his term of office, he retained certain of such funds, although they had been demanded by plaintiff, and kept the same on deposit in a bank in Grand Island, Neb., of which he was a stockholder and director. The cashier of such bank wrote to the cashier of defendant bank, which was its Omaha correspondent, explaining that his bank had certain money of plaintiff on deposit; that on a certain date plaintiff would issue a statement, and, for reasons concerning his own bank, he did not wish such deposit to appear therein. He requested defendant to give plaintiff a fictitious credit for the amount on said date, inclosing his note for the amount to be credited, and also a check for the same amount, to be used in paying the note a day or two later. He further stated that the arrangement had been fully explained to, and was understood by, Z. and plaintiff's directors. The arrangement was carried out, and defendant's cashier, a few days later, on request, issued a certificate stating that on the date named plaintiff had such sum on deposit in his bank. This certificate was sent to the Grand Island bank, and by it given to Z., who forwarded it to plaintiff. Three weeks later the Grand Island bank failed, and Z. and his sureties were also insolvent. Plaintiff, having made demand, brought action against defendant to recover the amount, suing both on the certificate and for money had and received. *Held*, that the certificate executed by defendant's cashier was not an obligation which would support an action, nor would the action lie on an implied promise, since defendant did not in fact receive any money on deposit; that it was not estopped to show such facts by the certificate, which was issued only as an accommodation to its correspondent, and without any intention to deceive plaintiff, or knowledge that it would be so used, but, on the contrary, with the understanding that plaintiff's officers had full knowledge of the transaction; that, when there is nothing in the circumstances of a case indicating that one making a false statement intended that the complaining party should act on it, the party making such statement is not estopped from showing the truth.

**4. SAME—REMEDY OF PARTY INJURED.**

Where a bank issued a certificate falsely stating that on a certain date it had on deposit a sum to the credit of a party, and it was claimed that the certificate misled the party and occasioned damage, but it appeared that such damage was much less than the amount of the certificate, *held*, that the proper remedy was an action ex delicto for deceit, rather than in assumpsit to recover the amount of the certificate.

Sanborn, Circuit Judge, dissenting.

108 F.—48

In Error to the Circuit Court of the United States for the District of Nebraska.

The Modern Woodmen of America, an Illinois corporation, and the plaintiff in error, sued the Union National Bank of Omaha, Neb., the defendant in error, for the sum of $27,269.33, the complaint containing two counts or causes of action. The first count alleged, in substance, that on December 31, 1895, the plaintiff had on deposit with the defendant bank the sum of money last stated, which sum it had ever since refused to pay. The second count alleged, in substance: That on January 6, 1896, the defendant bank issued and delivered to the plaintiff its certificate of deposit in the following form:

"January 6, 1896.

"I, Charles E. Ford, cashier of the Union National Bank of Omaha, Nebraska, do hereby certify that at the close of business on the 31st day of December, A. D. 1895, the Modern Woodmen of America had on deposit in this bank the sum of $27,269.33, designated 'General Fund.'

"Chas. E. Ford, Cashier."

—That the plaintiff had presented this certificate to the defendant bank on two occasions, to wit, on February 12, 1896, and March 10, 1896, and had demanded payment of the same, and that the defendant had declined to pay it, to the plaintiff's damage in the sum of $27,269.33. By its answer to the foregoing complaint the defendant denied that it then had on deposit, or that it had on deposit at the times mentioned in the complaint, any sum of money belonging to the plaintiff; and, as respects the cause of action founded on the alleged certificate of deposit, it alleged the following facts, in substance: That on or about the date of the alleged certificate of deposit one O. J. Smith had requested the cashier of the defendant bank to make a statement, for the accommodation of said Smith, that the plaintiff had the amount of money stated in the certificate on deposit with said defendant bank on December 31, 1895; that said cashier, relying upon the good faith and honesty of said Smith, executed the instrument set forth above, and delivered it to said Smith, without any consideration whatever, but solely for the accommodation of said Smith, and not in the usual course of business, and that said instrument was so executed without any right or authority on the part of said cashier, and without any consideration, and in pursuance of a specific agreement that said instrument should not be valid; and that at the same time, and as a part of the same transaction, Smith delivered to said cashier a check for the purpose of canceling said instrument; and that said Smith then and there stated to said cashier that the directors of the Modern Woodmen of America, the plaintiff herein, were aware of the transaction, and that it had no money on deposit with the defendant bank. To this answer the plaintiff company filed the following reply, in substance: That the certificate of deposit set forth in its petition was issued by the defendant bank with the intention that it should be delivered to the plaintiff, and for the purpose of being delivered to the plaintiff, and with the intention that the plaintiff should rely upon the facts stated in the certificate as being true; that said certificate, when issued, was forwarded to D. C. Zink, at Grand Island, Neb., to be forwarded by him to the plaintiff company; that said Zink did forward the same to A. R. Talbot, then chairman of the plaintiff's board of directors, who in turn forwarded it to the plaintiff's head clerk; that said Zink had been "head banker" of the plaintiff company, but his term of office had expired in June, 1895, and his successor duly appointed; that on December 30, 1895, said Zink had on deposit with the Bank of Commerce, of Grand Island, Neb., the sum of $27,269.33 of the plaintiff's funds; that for some time prior to December 30, 1895, the plaintiff had been endeavoring to obtain said money from said Zink, and had been threatening to sue said Zink and the sureties upon his official bond for the money so in his hands; that on the receipt of said certificate from said Zink it suspended further efforts in that behalf, relying upon the statement contained in the certificate, and believing the same to be true; that at the time it received said certificate, on or about January 6, 1896, Zink and the sureties on his bond were solvent, but that when the defendant bank refused to pay the certificate, and on or about February 22, 1896, they had become insolvent;

that on December 31, 1895, the Bank of Commerce, of Grand Island, Neb., had a large amount of money on hand subject to check, more than sufficient to pay the amount of money belonging to it which Zink then had on deposit in said bank; that, if the aforesaid certificate had not been issued by the defendant bank, Zink would have checked out said money, and paid it to the plaintiff company, prior to January 20, 1896, when said Bank of Commerce became insolvent; that while the plaintiff was pressing said Zink to pay over the money in his hands belonging to it, he, the said Zink, had finally agreed with the plaintiff that by December 31, 1895, the amount of money in his hands would be placed on deposit with the defendant, the Union National Bank of Omaha, and that a certificate of deposit would be furnished therefor; and that on receipt of the aforesaid certificate from said Zink it supposed that the funds in his hands had been deposited with the defendant bank on December 31, 1895, pursuant to said promise. In view of these facts, the plaintiff company alleged that the defendant was estopped from proving the facts which were averred in its answer. A trial was had on these issues, and at the conclusion of the plaintiff's testimony the trial court instructed the jury to return a verdict in favor of the defendant. The case is before this court for review on a writ of error which was sued out by the plaintiff.

John L. Kennedy (J. M. White and Myron L. Learned, on the brief), for plaintiff in error.

James H. Macomber, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Inasmuch as the trial court directed a verdict in favor of the defendant bank, the principal question to be considered by this court is whether that direction was right in view of admitted facts, and in view of facts concerning which there was no substantial controversy. Without attempting, therefore, to notice in detail the various exceptions which were taken to the admission and exclusion of evidence and to some portions of the court's charge to the jury, we shall direct our attention to the question above stated, namely, whether, in the light of the undisputed facts which were developed by the evidence, the trial court properly directed a verdict in favor of the defendant bank. With respect to those assignments of error that are addressed to the charge, and concerning which something has been said in the briefs, it may be well to observe that the rule is well settled that when, as in the present instance, a peremptory instruction is given in favor of either party, the only question with respect to the charge which is open for consideration by an appellate tribunal is whether such direction to find for one party or the other, when considered in the light of the pleadings and all the evidence, was right. Rollins & Sons v. Board of Com'rs of Gunnison Co., 49 U. S. App. 399, 26 C. C. A. 91, 80 Fed. 692, 695. This rule obviates the necessity of considering whether there was error in any part of the charge other than the final direction to the jury to return a verdict in favor of the defendant, as it is immaterial whether the learned judge of the trial court did or did not give expression to certain views that were erroneous in reaching that result.

Before considering the principal question in the case, we deem it expedient to notice a subordinate question, which arises upon the pleadings; and that is whether the instrument declared upon in the

second count of the complaint is an express contract, like a note or bill, upon which an action can be maintained, or whether it is in such form that it can only be used as an item of evidence to establish an indebtedness on account of which the law will imply a promise to pay. If the latter is the correct view concerning the alleged certificate of deposit, then the two counts of the complaint are not substantially different, because, proceeding under either, the plaintiff must establish the existence of a debt, and rely for a recovery upon a promise which the law will imply. It is obvious that the instrument in question is not in the form of an ordinary certificate of deposit, such as banks and other financial institutions are in the habit of issuing, because it does not speak as of the day it bears date, and acknowledge the existence of an indebtedness at that time, but refers to a prior date, and certifies that at that time the plaintiff company had on deposit a specified sum. Neither does the instrument in question contain the usual clause that the sum on deposit is payable on the return of the certificate, or on its presentation, or at any time. In view of the form of the certificate, it would seem to have been designed, not as an ordinary certificate of deposit to show the existence of a present indebtedness on the part of the defendant bank, but rather for the purpose of showing the state of the plaintiff's account with the bank at a prior date and an indebtedness at such prior date, which, for aught that the certificate discloses, may have been fully discharged before it was executed. No one, we apprehend, would purchase such an instrument on the faith of its own recitals, because it contained no representation that any funds were on deposit when it was issued, and for the further reason that it contained no words indicating that it was intended for negotiation or circulation as an obligation of the bank. For these reasons we are of opinion that an action could not be maintained on this certificate, as might have been done if it possessed the distinguishing features of an ordinary certificate of deposit, and contained words of negotiability or a promise to pay; that it is merely evidentiary in its character, and that the second count of the complaint, like the first, is founded, not upon the certificate, but upon an implied promise. Hotchkiss v. Mosher, 48 N. Y. 478, 482; Daniel, Neg. Inst. (3d Ed.) § 1704.

Passing to the main question in the case, it may be said that the testimony at the trial disclosed the following undisputed facts: D. C. Zink, who had been head banker of the Modern Woodmen of America, had in his possession $27,269.33 of the funds of the order, which he failed to turn over to his successor in office when the latter qualified as his successor, on or about August 18, 1895. This money he had on deposit with the Bank of Commerce, of Grand Island, Neb., of which institution he was a stockholder, and also an active director. After his successor was appointed, he endeavored for some time to induce said order to make said bank one of the depositaries of its funds, but such effort failed. The money remained in Zink's custody, and on deposit with the Bank of Commerce, during the fall of 1895, and until the bank failed, on or about January 20, 1896. During that period a demand appears to have been made on

him by the plaintiff company to turn over the money to his successor, and he seems to have promised to pay the same to his successor on or before December 31, 1895. On December 26, 1895, the following letter was written by O. J. Smith, cashier of the Bank of Commerce, to Charles E. Ford, cashier of the Union National Bank of Omaha:

"Grand Island, Neb., 12—26—'95.

"Chas. E. Ford, Esq., Cash., Omaha—Dear Sir: As you know, we still have about 25 M. of Zink money, and we have the privilege of keeping it for a time yet,—just how long I don't know, but I guess until we are ready to pay it out. Now, on Dec. 31 they make an annual statement, & for our good here I don't want it shown up as in our bank, as it is supposed that we haven't any Woodmen money. Can I arrange with you to give us a credit of this amt. for a day or two by sending you a note for the amt. & a check on the same account so you are fully protected, & you give credit to the Woodmen acct. for the amount for a day or two, & can then issue a certificate showing this amount in your bank at that time instead of here. Mr. Zink & the Woodmen board of directors all understand this, as it has been fully explained to them. An early reply will oblige, yours,    O. J. Smith, Cash."

The defendant bank, through its cashier, responded to the aforesaid letter as follows:

"Omaha, Neb., Dec. 27, 1895.

"O. J. Smith, Cashier, Grand Island, Neb.—Dear Sir: * * * With reference to our assisting you in the matter of the Zink money of $25,000, would say that we will comply with your request, provided everything is made safe to us; and you can send on the papers, as suggested by you.

"Respectfully yours,    Chas. E. Ford, Cashier."

On December 30, 1895, Smith wrote the following letter to the defendant bank, which contained the specified inclosures, to wit, a note and check:

"Grand Island, Neb., 12—30—'95.

"Chas. E. Ford, Esq., Cash.—Dear Sir: Inclosed find our note for $27,269.33; also check for like amount. Please make the credit on your books so you can make certificate that there was to the credit of the Modern Woodmen of America on Dec. 31—'95, the above amount. Don't want Zink's name to appear in the certificate. You can arrange it on your books to suit yourself so you are perfectly safe. We have this matter arranged with the directors of the Woodmen all O. K., so we can pay it out as we like, but don't want to show it here, for our own good, as it is supposed we haven't any of this money. Use check to pay note, & return note on Jany. 2 or 3.

"Truly yours,    O. J. Smith, Cashier.

"Kindly make certificate 31st December, and forward to Zink."

On December 31st, Ford, as cashier, replied to the aforesaid letter as follows:

"Omaha, Neb., Dec. 31, 1895.

"O. J. Smith, Cashier, Grand Island. Neb.—Dear Sir: I have yours of the 30th. I credit your account with $27,269.33. We will sign a certificate if Mr. Zink will send the form that he would like for us to use. * * *

"Respectfully yours,    Chas. E. Ford, Cashier."

On January 2, 1896, the following letter was written, which contained the inclosure therein stated, to wit, the note for $27,269.33:

"Omaha, Neb., Jan. 2, 1896.

"O. J. Smith, Cashier, Grand Island, Neb.—Dear Sir: I herewith inclose your note for $27,269.33, the same having been paid by check drawn on this bank by the Modern Woodmen of America.

"Respectfully yours,    Chas. E. Ford, Cashier."

On January 4, 1896, Zink himself wrote the following letter to the defendant bank, in obedience to the request contained in Ford's letter of December 31, 1895:

"Grand Island, Neb., Jan. 4, 1896.

"Chas. E. Ford, Esq., Cashier, Omaha, Nebraska—Dear Sir: Kindly make upon your letter head a certificate showing balance in your bank on the 31st day of December, 1895, as follows: 'I, Chas. E. Ford, Cashier of the Union National Bank of Omaha, Nebraska, do hereby certify that at the close of business on the 31st day of December, A. D. 1895, the Modern Woodmen of America had on deposit in this bank the sum of $————, designated "General Fund." ' Please forward same to me, and oblige,

"Yours, respectfully, D. C. Zink, Cashier."

On the receipt of the letter from Zink inclosing the form of a certificate which was desired, such a certificate was executed by Ford, as cashier, the same being the alleged certificate of deposit which is set forth above in the statement. This certificate, on its receipt by Zink, was by him transmitted, as it seems, to the plaintiff company. There was no evidence introduced, so far as we can discover, which tended to show that the defendant bank, or any of its officers, had any knowledge of the object which Zink or the Grand Island bank may have had in view in requesting the issuance of the alleged certificate of deposit, except such as was communicated by the aforesaid letters. No oral communication took place between any of the parties to the transaction, but the same was consummated by correspondence in the manner above shown. And, inasmuch as it was stated in Smith's letter of date December 26, 1895, and in his letter of date December 30, 1895, that the proposed transaction whereby the plaintiff company was to receive a fictitious credit had been "fully explained" to the plaintiff's board of directors, and that the Bank of Commerce had "this matter arranged with the directors of the Woodmen all O. K.," it is evident that the defendant bank did not issue the alleged certificate with any intent to deceive, mislead, or defraud the plaintiff company. The proof shows without contradiction that in issuing the certificate the defendant acted, as it supposed, with the full consent of the plaintiff company for the purpose of benefiting the Grand Island bank in some manner. There is no evidence, therefore, to sustain the allegation contained in the reply that the certificate in question was issued with the intention that it should be delivered to the plaintiff company, and that it should rely upon the facts stated in the certificate as true. That averment of the reply is wholly gratuitous, and unsupported by the evidence.

In view of the facts to which we have adverted, we are of opinion that the trial court properly directed a verdict in favor of the defendant bank. The action, as heretofore shown, was in assumpsit upon an implied promise, and to sustain such an action it is necessary to show the existence of an indebtedness on the part of the person sued, since the law never implies a promise on the part of any one to pay a sum of money, unless the proof shows the existence of a debt growing out of some transaction, which he is legally obligated to pay. In the present instance it appears that the defendant bank did not have in its hands on December 31, 1895, any funds belonging to the plaintiff company; that the credit given to it on that day was purely

fictitious; that it was given in reliance upon representations made by Smith that the plaintiff understood it to be fictitious, and upon the further assurance that the defendant should incur no liability by giving the credit. It goes without saying that under such circumstances the law will not imply a promise to pay a sum of money which was never received. This is the view of this very transaction which was entertained and expressed by the supreme court of Nebraska in State v. Bank of Commerce of Grand Island, 84 N. W. 406, 407.

Nor do we perceive that the defendant bank, on the facts above detailed, should be held estopped from showing the circumstances under which the certificate in question was issued, or from showing that in point of fact the Modern Woodmen of America had no funds whatsoever on deposit with it on December 31, 1895. To create an estoppel such as is here relied upon by the plaintiff company, it is generally held that the false statement must have been made with intent that the complaining party should act upon it, or it must at least appear that it was foreseen that he would in all probability act upon it to his prejudice. When there is nothing in the circumstances of the case which reasonably indicates that the one who made the false statement intended that the complaining party would act in reliance upon its being true, the party making it is not estopped from proving the truth. Kuhl v. Mayor, etc., 23 N. J. Eq. 84, and cases there cited; Mayenborg v. Haynes, 50 N. Y. 675; Wilcox v. Howell, 44 N. Y. 398, 402; Bigelow, Estop. (5th Ed.) pp. 570, 629; Bisp. Eq. § 290, and cases there cited. Now, in the present instance the false certificate was obtained from the defendant, as already stated, on the representation that the plaintiff's board of directors all understood the transaction, and assented to it; and, however culpable the defendant bank may have been in uttering a false certificate for the purpose of bolstering up the credit of the Grand Island bank, yet it is clear that it did not intend to deceive the plaintiff company, or to give utterance to a falsehood on which it would act to its prejudice, or in consequence of which it would take any action whatsoever. It supposed, and with good reason, that the fictitious credit which it was asked to make and certify to was made with the full knowledge of the plaintiff's board of directors, if not at their solicitation, and incidentally for the benefit of the plaintiff company. Under these circumstances we are persuaded that it would be carrying the doctrine of estoppel to an unreasonable limit to hold that the defendant is precluded from telling the truth, and is bound to pay its certificate in full. A very different result would probably be reached if the certificate had been a negotiable instrument, and had passed into the hands of an innocent purchaser for value; but we are not called upon to consider such a case.

Aside from the foregoing view, it is obvious that, upon the theory on which the present action is brought, there could have been no recovery against the defendant bank short of the full amount of the certificate; and it is apparent from such examination as we have made of the testimony bearing upon that issue that, if the plaintiff company sustained any damage whatever in consequence of the issu-

ance of the certificate, either by postponing action against Zink and his sureties for the space of about six weeks, or by the failure of Zink to withdraw the fund from the Bank of Commerce, or to make an attempt to withdraw it, the amount of such damage, if any, was small, and far less than the face of the certificate. It is not at all probable, we think, that the fund could have been collected from Zink and his sureties or the Bank of Commerce at any time after December 26, 1895. The fund was probably lost to the plaintiff prior to the latter date. Such actual damages as were in fact sustained could, doubtless, have been recovered in an action ex delicto for deceit, on the assumption, of course, that the directors of the plaintiff company were ignorant of the circumstances under which the certificate was obtained, and on the further assumption that the certificate was issued by the defendant, as alleged in the reply, with the intention that the plaintiff should rely and act on the facts therein stated, and that it was in fact used by Zink to deceive the plaintiff company, and occasioned it some damage. We are of opinion, therefore, that, if a right of action existed, it should have been brought in form ex delicto, instead of being brought in a form which would necessitate the recovery of a specified sum, although it might be far in excess of the damages actually sustained in consequence of the alleged deceit. The judgment below is affirmed.

SANBORN, Circuit Judge (dissenting). I agree with the proposition of the majority that an action for damages for deceit could have been maintained by the plaintiff against the bank on its certificate of January 6, 1896, and the facts surrounding its presentation to the plaintiff. But that position leads inevitably to the conclusion that an action for the money which that certificate declares that the bank held on deposit for the plaintiff on December 31, 1895, could also be maintained. An estoppel is a prohibition from denying the existence of the facts and the legal consequences of the existence of the facts which one has falsely represented to exist to the damage of another. In this case it forbade the bank to deny that on December 31, 1895, it had $27,269.33 of the money of the plaintiff in its possession, and it as conclusively prohibited it from denying the legal effect of that fact, namely, its implied promise and its legal liability to pay the plaintiff that amount. This action is not based on the theory that this money was ever actually deposited in this bank. It rests on the fact that the bank falsely represented to the plaintiff, to its damage, that it owed it this amount of money on December 31, 1895, and upon the legal conclusion that it was thereby forbidden to deny the truth of its statement. Hence it is that the plaintiff was not required to prove that any money was actually on deposit with the bank to the credit of the Modern Woodmen of America, in order to raise the implied promise and the legal liability of the bank to pay this debt. When the Modern Woodmen of America had proved that it relied upon the truth of the statement in that certificate, and that it was thereby induced to change its position, to its damage, that certificate became as incontestable proof against the bank that the facts therein stated were true, and that the necessary legal conse-

quences of these facts, the implied promise and the legal liability to pay, had arisen, as a judgment or a decree to that effect would have been. When a false representation raises an estoppel, the injured party has a choice of remedies. He may aver the falsity of the statement, and recover damages for the deceit, or he may insist upon the truth of the representation, and enforce the rights he would have had if it had been true. One purchases bank stock for another, but takes the certificate in his own name. The bank may maintain an action against him for damages for the deceit, but it may also refuse to avail itself of this remedy, may insist that the false appearance he has caused represented the truth, and may collect assessments from him who made the representation just as if it had been true. Horton v. Mercer, 71 Fed. 153, 18 C. C. A. 18, 36 U. S. App. 234. One who has a first lien upon property represents to another about to take a second lien thereon that the latter's mortgage will constitute a first lien The holder of the second lien may recover damages for this deceit, but that is not his only remedy. He may insist that his mortgage is a first lien, may foreclose it upon that theory, and the holder of the first lien will not be permitted to deny either the fact or its legal consequences. Guthrie v. Quinn, 43 Ala. 561; Kuhn v. Morrison, 78 Fed. 16, 23 C. C. A. 619, 41 U. S. App. 700. A bank states that a check is good when it is not, and one accepts it in payment of some obligation of the debtor worth much less than the face of the check. He may sue the bank for the deceit, and recover the damages he actually sustained. But he is not confined to that remedy. He has a right to recover of the bank the exact amount he would have received if its statement had been true. He can recover the face of the check. Merchants' Nat. Bank v. State Nat. Bank, 10 Wall. 604, 645, 19 L. Ed. 1008; Riverside Bank v. First Nat. Bank of Shenandoah, 74 Fed. 276, 20 C. C. A. 181, 38 U. S. App. 674; Farmers' & Mechanics' Bank of Kent Co. v. Butchers' & Drovers' Bank, 16 N. Y. 125, 69 Am. Dec. 678.

Now here, while the plaintiff had the right to sue the bank, and to recover damages for the deceit, that was not its only remedy. It had an equal right to maintain an action, and to recover a judgment against the bank for the money which it would have been entitled to receive if the statement in the certificate had been true,—the $27,-269.33, and interest from date of demand or presentation. Indeed, under the facts of this case, this certificate had exactly the same meaning and the same legal effect that Zink's check payable to the plaintiff and certified by the bank would have had. It was a certificate of the bank that it held $27,269.33 on deposit for its benefit on December 31, 1895. When this certificate was presented by Zink to the plaintiff, it and its officers knew that, if that money was there to its credit on December 31, 1895, it still remained there, for they had not withdrawn it, and no other party had authority to do so. Hence the presentation of the certificate to the plaintiff was a plain statement of the bank that it was indebted to the Modern Woodmen of America at the time the certificate was presented in the amount stated upon its face. Moreover, this certificate does not differ in any respect that is material to the liability of the bank to pay the

debt it evidences from the usual certificate of deposit, upon which all will concede that an action may be maintained. Such a certificate reads:

"St. Louis, April 9, 1901.

"John Smith has deposited with this bank one thousand dollars in current funds, payable to his order on the return of this certificate properly indorsed."

Of course, such a certificate is a negotiable instrument, while the certificate before us is not. But, if the words "payable to his order on the return of this certificate properly indorsed" are stricken from the instrument, the legal liability of the bank to pay its face to the payee—a liability which may be enforced by an action on the instrument—will still remain. Now, the only difference between such a certificate and that in evidence in this case is that the former certifies that the money was deposited at some indefinite time in the past, without stating when it was there, while the latter certifies that it was deposited at some time in the past, and that it was still on deposit with the bank seven days before the certificate was dated. This variance cannot make any material difference in the legal effect of the two certificates, and that issued by the defendant is, in my opinion, an evidence of indebtedness upon which an action is maintainable to the same extent and in the same way that it is upon a certified check, upon a certificate of deposit, or a duebill. A little reflection will show that the cashier of a bank, when he certifies a check or issues a certificate of deposit, is always stating a past transaction,—that money has been deposited, that the bank has become indebted. He usually writes his certificates of deposit in that form, and his certificate in this case stated only what he was accustomed to state whenever he issued a certificate of deposit. If the plaintiff had been a party to, or had been aware of, the mischievous acts which led to the issue of this certificate, those acts would have constituted a defense to it. But it was not. It stands in the same relation to the bank that the purchaser of a certified check or of a certificate of deposit is placed. The latter purchases the certificate in good faith, in reliance upon the truth of the statement it contains. The plaintiff took this certificate in good faith, in reliance upon the truth of the statement it contained that the bank was indebted to it in the amount of its face, and for this reason it forbore to collect its debt of Zink and the Grand Island bank, the parties that really owed it. It received the certificate in good faith in payment of Zink's debt, and permitted him, his sureties, and the Grand Island bank to escape payment on account of its reliance upon the indebtedness of the Omaha bank. These facts estopped the latter bank from proving the falsity of its certificate.

Ford and the bank cannot escape from this estoppel because they did not intend to induce the plaintiff to act upon the certificate. An actual intent to deceive, or to induce another to act on a false representation, is not essential to the creation of an estoppel. It is sufficient that the natural and probable effect of the misrepresentation was to deceive others, and to induce them to change their position in reliance upon it. Such a misstatement begets a conclusive presumption that he who makes it intends thereby to deceive, and to induce

others to act upon it, under the familiar rule that every one is presumed to intend the natural consequences of his acts. The true rule is that, if a man so conducts himself, whether intentionally or not, that a reasonable person would infer that a certain state of things existed, and the latter acts upon that inference, the former will afterwards be estopped from denying it. Bigelow, Estop. (5th Ed.) 634; Cornish v. Abingdon, 4 Hurl. & N. 549; Barnes v. Railroad Co., 54 Fed. 87, 89, 4 C. C. A. 199, 201; Paxson v. Brown, 10 C. C. A. 135, 61 Fed. 874, 882; Cairncross v. Lorimer, 3 Macq. H. L. Cas. 828; Dickerson v. Colgrove, 100 U. S. 578, 582, 25 L. Ed. 618; Kirk v. Hamilton, 102 U. S. 68, 75, 26 L. Ed. 79; Evans v. Snyder, 64 Mo. 516; Pence v. Arbuckle, 22 Minn. 417; Crook v. Corporation of Seaford, L. R. 10 Eq. 678; Faxton v. Faxon, 28 Mich. 159; Cooper v. Schlesinger, 111 U. S. 148, 155, 4 Sup. Ct. 360, 28 L. Ed. 382; Kiefer v. Rogers, 19 Minn. 32, 36 (Gil. 14); Slim v. Croucher, 1 De Gex, F. & J. 518; Litchfield v. Hutchinson, 117 Mass. 195, 198; and cases cited in Barnes v. Railway Co., 4 C. C. A., at page 202, 54 Fed., at page 90.

Now, the Omaha bank, when it issued this certificate, did so conduct itself that any one who saw it would naturally and inevitably conclude that that bank was indebted to the plaintiff, and would confidently act on that belief. These facts were sufficient evidence of intention to sustain the estoppel. But this was not all. This certificate was not issued to inform those who knew the state of these accounts. It was not issued to educate the cashier of the Grand Island bank or Zink. It was issued for the sole purpose and with the sole intent of misleading and deceiving those who did not know the condition of these accounts, and with the intent to induce them to act or to refrain from acting in reliance upon this certificate. Ford intended—and in this transaction Ford was the bank, because he was the officer to whom the duty of examining and certifying the state of its accounts was intrusted, and what Ford intended the bank intended—Ford intended that this certificate should deceive the members of the Modern Woodmen of America and the customers of the Grand Island bank, and that it should induce them to act, or, rather, to refrain from acting, to refrain from collecting from the Grand Island bank this $27,269.33, and other amounts which that bank owed until it was too late. The two banks and Zink entered into a conspiracy to misrepresent to the members of the plaintiff and the customers of the Grand Island bank the state of the accounts of these two banks with the plaintiff. In pursuance of that conspiracy, for that purpose, and with the intent to deceive these parties, and to induce them to refrain from enforcing their rights, and with no other intent, the Omaha bank issued this certificate. Does it lie in its mouth now to say that its falsehood was more deceitful and more effectual to accomplish its purpose than it intended it should be; that it not only deceived and defrauded the lay members of the plaintiff, but also its officers, whom it supposed, from the false statement of one of its co-conspirators, to be participes criminis in its nefarious scheme? I think not. One who fires his gun into a crowd, and kills a man, is not guiltless because he did not intend to harm that man, but meant to kill another. One who falsely certifies a check, which

C. takes in reliance upon the certificate, cannot escape the estoppel because he did not intend to deceive C., but thought to cheat D.; and the Omaha bank ought not to escape this estoppel because its purpose and intent were to deceive the lay members of the plaintiff's organization, while its false certificate not only accomplished that purpose, but went further, deceived the officers of the corporation, and induced the plaintiff to do the very thing which the bank intended that its certificate should induce others to do,—induced it to refrain from collecting the obligations of the Grand Island bank until it was too late. In my opinion, the facts in this case present every element of an equitable estoppel, the certificate itself is an evidence of a debt upon which an action can be maintained, and the judgment below ought to be reversed.