HAYDEN et al. v. WELLINGTON et al.

(Circuit Court of Appeals, Eighth Circuit. July 16, 1894.)

No. 422.

ASSIGNMENT FOR BENEFIT OF CREDITORS—WHAT CONSTITUTES—EVIDENCE.
    Mills' Ann. St. Colo. §§ 169, 171, authorizing general assignments for the benefit of creditors, provide that no such assignment by an insolvent,

or one in contemplation of insolvency, shall be valid, unless it is for the benefit of all his creditors in proportion to their claims. *Held,* that a bill of sale of all one's property for the purpose of paying a portion only of his debts, including a debt due one who had attached such property, and not intended by the debtor to be a general assignment, would not be given effect as such, though in consideration thereof it was agreed that the attachment should be released, the attachment having been obtained in good faith, and not in pursuance of a secret agreement for its subsequent release and the execution of the bill of sale, to enable the parties to evade the provisions of the assignment act.

Appeal from the Circuit Court of the United States for the District of Colorado.

This was a bill by Charles H. Hayden and Harvey S. Hayden, copartners as Hayden Bros., against Herbert D. Wellington, Earl M. Cranston, and the Union National Bank of Denver, to establish a trust, and for an accounting. The circuit court sustained a demurrer to and dismissed the bill. Complainants appealed.

In the circuit court this case was disposed of by a demurrer to the bill of complaint. The bill was filed by the appellants, Charles H. and Harvey S. Hayden, composing the firm of Hayden Bros. The appellees demurred on the ground that the bill did not state facts sufficient to constitute a cause of action. The circuit court sustained the demurrer, and thereupon entered a decree dismissing the bill, whereupon the complainants below appealed.

In substance, the bill disclosed the following facts, to wit: That in an action begun on January 21, 1893, by the firm of Hayden Bros. against Herbert D. Wellington, one of the appellees, the firm recovered a judgment against Wellington on the 7th day of March, 1893, for $8,607, on which judgment and execution was issued, and was returned unsatisfied on the 6th day of June, 1893; that in the fall of the year 1892 the Union National Bank had commenced a suit by attachment against said Wellington for the sum of $20,000, which the latter owed to the bank, and that prior to October 13, 1892, all of the property then owned by Wellington had been levied upon by the bank, and was, at the last-mentioned date, held under a writ of attachment to satisfy the bank's demand; that at or about the last-mentioned date other creditors of Wellington had sued out writs of attachment against him, and had caused the same to be levied upon his property. The bill averred that, after these several levies in favor of the bank and other attaching creditors, an agreement had been entered into between Wellington and the bank, whereby the bank was to release its attachment, and Wellington was to convey the attached property to Earl M. Cranston, also one of the appellees, to be by him sold and disposed of for the payment of the demands of the several attaching creditors; that this agreement was subsequently carried into effect on or about the 13th day of October, 1892, and that the attached property was transferred by Wellington to Cranston for the purpose and object last stated. The bill averred that the purpose of Wellington in entering into the aforesaid arrangement was to prevent the complainants. Hayden & Bros., and other creditors who had not then brought suit, from levying attachments on the said property, and to prevent them from collecting their several debts, and to compel them to compromise the same on such terms as Wellington might propose. It was also alleged in the bill that the Union National Bank had agreed with Wellington that the attached property should be sold by Cranston for its benefit, and that, after its debt had been paid in full out of the proceeds of the sale of the attached property, it would assist Wellington to resume business. The bill also charged that the property levied upon and subsequently conveyed to Cranston, as agent or trustee for the bank, was worth largely more than the amount of the bank's demand; that Cranston had sold the property for the sole purpose of enabling the bank to realize what was due to it, but that he had not administered the trust fairly, and that he had sold the property conveyed to him for a small percentage of its actual value. The relief prayed for was that Cranston and the Union National Bank might be required to disclose what property had been conveyed

to Cranston; that the latter might be compelled to account for whatever had been realized by him therefrom; that Cranston might be adjudged to be a trustee for all of the creditors of Wellington; and that he be compelled to divide the proceeds of the property conveyed to him ratably among all of Wellington's creditors.

Lucius M. Cuthbert (Henry T. Rogers and Daniel B. Ellis, on the brief), for appellants.

Robert J. Pitkin (Earl M. Cranston, William A. Moore, and C. P. Butler, on the brief), for appellees.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

THAYER, District Judge, after stating the case as above, delivered the opinion of the court.

There are some allegations in the bill which are sufficient, no doubt, to show that Wellington was actuated by a fraudulent purpose, as regards some of his creditors, in making the alleged bill of sale to Cranston, as agent or trustee of the Union National Bank; but there are no allegations which tend to show that the bank either had knowledge of or participated in any such fraudulent design; nor is it claimed by the appellants that the bill can be maintained on the ground that it is a proceeding to cancel and annul a conveyance which was contrived by the parties thereto with an intent to hinder, delay, or defraud creditors. The sole contention is that the averments contained in the bill of complaint are sufficient to show that the "bill of sale or conveyance," as it is described in the complaint, was, in legal effect, a "general assignment for the benefit of creditors," within the meaning of the Colorado statute on that subject; and it is said that the purpose of the suit was to have it adjudged to be a general assignment, and that the demurrer should have been overruled, and that Cranston should have been compelled to account for the proceeds of the assigned property precisely as if it had been in form a general assignment for the benefit of all of Wellington's creditors. The question to be considered, therefore, is whether this view is tenable.

The provisions found in the Colorado statute which are most material to the discussion of the question in hand are sections 1 and 3 of an act passed in 1885, which are now sections 169 and 171 of Mills' Annotated Statutes of Colorado. They are as follows:

"169. Any person may make a general assignment of all his property for the benefit of his creditors by deed duly acknowledged, which, when filed for record in the office of the clerk and recorder of the county where the assignor resides, or if a non-resident, where his principal place of business is in this state, shall vest in the assignee the title to all the property, real and personal, of the assignor in trust for the use and benefit of his creditors."

"171. No such deed of general assignment of property by an insolvent, or in contemplation of insolvency for the benefit of creditors, shall be valid, unless by its terms it be made for the benefit of all his creditors, in proportion to the amount of their respective claims."

It will be observed that this statute contemplates voluntary action on the part of an insolvent debtor. It does not compel him to relinquish the possession or control of his property to an as-

signee or trustee for the benefit of his creditors, when he becomes unable to pay his debts. The act gives him permission to make a transfer of that nature, with certain prescribed formalities, and it provides for the due administration of his estate when it has been thus assigned. It declares, in substance, that such deed of assignment shall be invalid unless it is made for the benefit of all of the debtor's creditors. In this latter clause, declaring the invalidity of the conveyance, the reference is manifestly to an instrument executed in the mode and manner prescribed by section 169, and intended by the assignor to be administered under the assignment act. This statute differs materially from laws which have been enacted in some other states on the subject of assignments, which declare, in effect, either that "all voluntary assignments or transfers of property for the benefit of creditors shall be void unless made for the common benefit of all creditors," or that "no general assignment by an insolvent person for the benefit of creditors shall be valid unless made for the benefit of all creditors," or that "every provision in any assignment hereafter made, providing for the payment of one debt in preference to another, shall be void," or that "every voluntary assignment of property by a debtor for his creditors shall be for the benefit of all of the creditors of the debtor." Statutes of the latter nature differ so essentially from the one now question, and are to such extent indicative of a different public policy, that decisions made thereunder are of little value in construing the Colorado statute. More weight, we think, ought to be given to decisions of the supreme court of Colorado, which foreshadow the construction that the act in question will probably receive in that state. In the case of Campbell v. Iron Co., 9 Colo. 60, 10 Pac. 248, the court was called upon to construe a previous statute of Colorado on the subject of assignments that contained provisions very similar to those found in the existing law which is above quoted. With reference thereto, the court said:

"The general rule is that statutes in derogation of the common law are to be strictly construed. Certainly, a proper regard for this rule forbids the enlargement of a statute by construction so as to include common-law principles not clearly within its language and spirit. * * * Experience demonstrates the extreme danger of interfering by legislation with the debtor's jus disponendi so long as he retains dominion over his property, and a careful and skillful attempt by statutes to guard all the equitable rights of creditors might result in untold disaster to the business world. Accordingly, legislative bodies—our own included—have exercised extreme caution in dealing with the subject of assignments, and have left untouched many of the principles relating thereto which prevailed at common law."

See, also, the observations made with reference to the same subject in May v. Tenney, 148 U. S. 60, 69, 13 Sup. Ct. 491.

If we adopt the rule of strict construction thus announced, in the interpretation of the statute in question, so as to make it applicable only to those transfers of property which are clearly within the spirit as well as within the letter of the assignment act, then we think that no difficulty will be experienced in reaching the conclusion that the bill of sale involved in the present suit was not rendered invalid by the provisions of the Colorado statute, although

it operated to transfer all of the debtor's property to a third party for the purpose of paying a portion only of his debts. It is apparent from the allegations of the bill of complaint that the debtor did not intend to proceed under the assignment act, or to take advantage of any of its provisions. Moreover, it is not charged, nor is it claimed, that the attachment writ was sued out by the bank in pursuance of a secret agreement between it and its debtor, by virtue of which the writ was to be subsequently released, and a bill of sale executed, so as to enable the parties by that device to evade the provisions of the assignment act. The bill shows affirmatively that the creditor for whose benefit the bill of sale to Cranston was made had secured a valid lien, in good faith, and in the mode provided by law, upon all of the assigned property, before the bill of sale was executed; and it is a fair inference from the facts stated in the bill of complaint that the parties agreed upon a dismissal of the attachment suit, and the execution of the bill of sale, solely for the purpose of preventing a possible sacrifice of the attached property by a judicial sale. As the bill does not aver that the attachment was sued out by the preferred creditor in pursuance of any such secret arrangement between the debtor and creditor as is last indicated, it is fair to presume that the agreement to release the attachment lien, and to substitute a bill of sale therefor, was entered into in perfect good faith, in the belief that the attached property could by that means be sold to much better advantage.

In view of these considerations, we are unable to hold that the bill of sale executed by the insolvent debtor was invalid, and we are equally unable to give it effect as a deed of general assignment, according to the prayer of the bill. We think that the assignment act in question was not intended to deprive an insolvent debtor of that dominion over his property which appears to have been exercised in the present case, and that it would be unwise to give it such effect. As the bank had secured a lawful preference by its superior diligence before the bill of sale in its favor was executed, no creditor of Wellington was prejudiced by the conveyance. That conveyance made the same disposition of the proceeds of the attached property which the law would have made if the attachment suit had been regularly prosecuted to final judgment. At common law the debtor had an undoubted right to enter into such an arrangement with his creditor as appears to have been made in the present instance, and we know of no sufficient reason why the assignment act should receive a construction which will interdict such arrangements in future, if they are entered into in good faith, and are not conceived with a view of evading the provisions of the assignment law. Certain it is that the transaction in question was not expressly prohibited by the assignment act, and was not opposed to the policy of any other statute of the state of Colorado.

In conclusion it will not be out of place to observe that, as the Colorado statute invalidates a deed of general assignment by an insolvent debtor, unless it is made for the benefit of all of his creditors, no reason is perceived, if the appellants are right in their con-

tention, why they did not have an adequate remedy at law to reach the assigned property at the time this proceeding was instituted. In May v. Tenney, supra, it was held that in Colorado a general transfer of property by a debtor for the benefit of a preferred creditor does not, if found to be in violation of the policy of the state as expressed in its legislation, become a general assignment for the benefit of all creditors without preference, but is entirely void. According to that view of the case, it follows that, if the bill of sale to Cranston was within the provisions of the assignment act, it was a void instrument, and in that event the property conveyed was subject to attachment in Cranston's hands, and he might have been compelled to account for the proceeds thereof by garnishment process. But, be this as it may, our conclusion is that the bill of complaint did not show that the conveyance to Cranston was within the purview of the assignment act, and, so holding, the decree of the circuit court is affirmed.