MASURY v. ARKANSAS NAT. BANK et al.

(Circuit Court of Appeals, Eighth Circuit. March 27, 1899.)

No. 1,110.

1. CORPORATIONS—TRANSFER OF STOCK—STATUTORY PROVISIONS.

A provision in the charter or by-laws of a corporation, or in a general incorporation act, that stock shall be transferable only on the books of the corporation, is intended to prescribe a mode of transfer as between the corporation and a stockholder, in all matters relating to the internal government and management of the corporation, rather than between the stockholder and third parties; and, notwithstanding such provision, a stockholder may devest himself of all beneficial interest in his stock by an assignment and delivery of his certificate, although no transfer is made on the books of the corporation.

2. SAME—PLEDGE OF STOCK.

Where a stockholder in a corporation has pledged his stock as collateral security, by the indorsement and delivery of his certificate, a creditor, by the levy of an attachment or execution, can only reach the interest of the pledgor therein, and is not aided, except in favor of purchasers at a sale under execution who purchase for value and without notice, by a statute providing that stock shall be transferred only on the books of the company.

3. SAME—PUBLIC RECORD OF STOCK TRANSFERS—CONSTRUCTION OF ARKANSAS STATUTE.

The provision of the Arkansas statute (Sand. & H. Dig. 1894, § 1338) that, on the transfer of any stock in a corporation, a certificate of such transfer shall be deposited for record with the county clerk, and that "no transfer of stock shall be valid as against any creditor of such stockholder until such certificate shall have been so deposited," is not intended to comprehend cases where stock is pledged as security for a debt by a simple indorsement and delivery of the stock certificate, but applies only where the stockholder parts with his entire legal and equitable title by an absolute sale; the purpose of the statute being to afford a record for the benefit of the taxing authorities, or those interested in or dealing with the corporation, and who may be entitled to proceed against the stockholders in case of its insolvency, for which purposes a pledgee is not a stockholder.

4. SAME—USE OF STOCK CERTIFICATES AS COLLATERAL.

In view of the large commercial use made of corporate stock certificates as collateral security, it is to the public interest that such use shall be simplified and facilitated by placing such certificates as nearly as possible on the plane of commercial paper.

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

This case grows out of the following facts: On January 12, 1891, Ed. Hogaboom, who was the owner of 400 shares of stock in the Park Hotel Company, an Arkansas corporation, of the par value of $25 per share, assigned the certificate therefor to Grace Masury, the appellant and the complainant below, as collateral security for a loan of $10,000 which was that day made by her to said Hogaboom. The pledge of the stock was made in the state of New York. On May 1, 1896, the Arkansas National Bank, one of the appellees, brought a suit by attachment against said Ed. Hogaboom in the circuit court for Garland county, Ark., and caused the writ of attachment to be levied on the aforesaid stock, which stood in the name of Hogaboom on the stock book

of the hotel company; it never having been formally transferred on the books of the company, although the stock certificate was then held by the appellant in pledge to secure the aforesaid indebtedness, which has never as yet been paid. In said attachment suit an order for the sale of the stock to satisfy Hogaboom's indebtedness to the Arkansas National Bank was subsequently made, and the stock was sold by the sheriff of Garland county, Ark., on December 17, 1896; but previous thereto, on November 20, 1896, the appellant had applied to the Park Hotel Company for the transfer of the stock to her upon the books of the company. Such request was not complied with, for the alleged reason that the stock had been previously attached by the Arkansas National Bank. Prior to the sheriff's sale on December 17, 1896, the appellant gave notice to all persons present at the sale, as well as to the attaching creditor, that the stock certificate had been assigned to her in pledge, as aforesaid, prior to the levy of the attachment.

The laws of Arkansas (Sand. & H. Dig. 1894, pp. 474, 475, c. 47) contain the following provisions relative to the transfer of stock, which provisions appear to have been in force at the date of all of the transactions aforesaid:

"Sec. 1337. The president and secretary of every corporation organized under the provisions of this act shall annually make a certificate showing the condition of the affairs of such corporation as nearly as the same can be ascertained, on the first day of January or of July next preceding the time of making such certificate, in the following particulars, viz.: The amount of capital actually paid in; the cash value of its real estate; the cash value of its personal estate; the cash value of its credits; the amount of its debts; the name and number of shares of each stockholder; which certificate shall be deposited on or before the 15th day of February or of August with the county clerk of the county in which said corporation transacts its business, who shall record the same at length in a book to be kept by him for that purpose.

"Sec. 1338. Whenever any stockholder shall transfer his stock in any such corporation, a certificate of such transfer shall forthwith be deposited with the county clerk aforesaid who shall note the time of said deposit and record it at full length in a book to be by him kept for that purpose; and no transfer of stock shall be valid as against any creditor of such stockholder until such certificate shall have been so deposited. * * *"

"Sec. 1342. The stock of every such corporation shall be deemed personal property and be transferred only on the books of such corporation in such form as the directors shall prescribe; and such corporation shall at all times have a lien upon all the stock or property of its members invested therein for all debts due from them to such corporation."

This action was brought by the appellant against the appellees to compel the Park Hotel Company to permit a transfer to her upon the books of the corporation of the aforesaid stock, and to compel the corporation to issue to her the proper stock certificate upon such transfer. The bill alleged, in substance, the foregoing facts. A demurrer was interposed by the defendants, which was sustained, and the bill was dismissed for want of equity. 87 Fed. 381. The case comes to this court on appeal from such decree.

Claire E. More (Almon W. Bulkley, Edward E. Gray, W. E. Hemingway. U. M. Rose, and G. B. Rose, on the brief), for appellant.

Jacob Trieber (George G. Latta, on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The claim of the Arkansas National Bank, the attaching creditor, to the 400 shares of stock in controversy, derives little or no support from the Arkansas statute (section 1342, supra), which declares that stock in a corporation shall be deemed personal property, and shall be transferred only on the books of the corporation in such form as

the directors shall prescribe, and from the further fact that such a transfer on the books of the stock in controversy had not been made when the attachment was levied. In a great number of cases it has been held, and such must be regarded as the prevailing rule, that such a provision, when found either in a special charter or in a general incorporation act, or in the by-laws of a corporation, is intended to prescribe a method of transfer which shall be deemed effectual, as between the corporation and its stockholders, in all matters relating to the internal government and management of the corporation, rather than to prescribe a method of transfer which must be observed as between a stockholder and third parties. Notwithstanding such a provision in the charter of a corporation, a stockholder thereof may devest himself of all beneficial interest in his stock by a written assignment of the same and a delivery of his stock certificate, or by the indorsement and delivery of his stock certificate, or, as some authorities hold (Cook, Stock & S. §§ 308, 375), by the delivery of his stock certificate without indorsement, although no transfer is made on the books of the corporation. A transfer of his stock in either of the two ways first above indicated, although such transfer is not registered on the corporate books, estops the stockholder from claiming any further title to the stock so transferred, as against subsequent bona fide purchasers thereof for value. Bank of Commerce v. Bank of Newport, 27 U. S. App. 486–489, 11 C. C. A. 9, and 63 Fed. 898; Horton v. Mercer, 36 U. S. App. 234, 18 C. C. A. 18, and 71 Fed. 153; Johnston v. Laflin, 103 U. S. 800–804; U. S. v. Cutts, 1 Sumn. 133, Fed. Cas. No. 14,912; Continental Nat. Bank v. Eliott Nat. Bank, 7 Fed. 369–372; McNeil v. Bank, 46 N. Y. 325; Lund v. Mill Co., 50 Minn. 36, 52 N. W. 268. See, also, Cook, Stock & S. §§ 378, 379, 465, and the numerous cases there cited; also Mor. Corp. § 197.

In view of the doctrine last stated, and in view of another rule of very general application, namely, that a creditor, by the levy of a writ of attachment or execution, merely succeeds to the rights of his debtor in the attached property, whatever the same may be, it follows that the attaching creditor in the case at bar cannot maintain its right to the stock of the Park Hotel Company as against the appellant, to whom the certificate representing the stock had been indorsed and delivered as collateral security long prior to the attachment, merely because no record of the transfer to her had been made on the books of the corporation when the attachment was levied. The pledge of the stock being valid as between the pledgor and the pledgee, the attaching creditor, under and by virtue of the statute requiring registration on the books of the corporation, and by virtue of its purchase of the stock at the execution sale, could at most only assert a right to redeem the stock, inasmuch as it was duly notified of the pledge prior to the execution sale, and bought with full notice of the fact that the stock was then held by the appellant as collateral security for an unpaid debt.

It is claimed, however,—and this is the principal contention on the part of the attaching creditor,—that it acquired a valid title to the stock because the general incorporation law of the state of Arkansas also provides (section 1338, supra) for the registration of stock trans-

fers on the books of the county clerk of the county where the corporation transacts its business, and declares, in substance, that no transfers of stock shall be valid, as against any creditor of a stockholder, until a certificate has been deposited with such county clerk. It is insisted that by virtue of this section of the statute the appellant has no lien on the stock in controversy, as against the attaching creditor, because a certificate of the transfer to her was not lodged with the county clerk prior to the attachment. This contention leads us to inquire, in the first instance, whether section 1338 of the general incorporation law was intended to comprehend cases where stock in a corporation is pledged as security for a debt by a simple indorsement and delivery of the stock certificate, as well as those cases where a shareholder in a corporation parts with his entire legal and equitable title by an absolute sale of his stock. This question has never been considered by the supreme court of the state of Arkansas, and is therefore res integra.

Sections 1337 and 1338, above quoted in the statement, originally formed section 12 of an act entitled "An act to provide for the creation and regulation of incorporated companies" (Laws Ark. 1868–69, pp. 179–183, c. 92), which was approved on April 12, 1869. The section as originally enacted is quoted below in a footnote.[1] The division of the original section into two sections, as they now appear in Sandels & Hill's Digest of the Laws of Arkansas, was the work of the compilers. Looking at the two sections in the form in which they were originally enacted, the inference is a reasonable one that the legislature had in mind transfers whereby a shareholder parted with his entire legal and equitable title to the stock transferred, when it declared, in the concluding clause of the section, that whenever a stockholder transferred his stock a certificate of such transfer should be deposited with the county clerk. While the act does not in terms prescribe by whom the certificate of transfer shall be filed, whether by the corporation or by the person receiving a transfer of stock, nor what the certificate shall contain, yet it is fair to presume that the lawmaker intended to say that a person purchasing stock should obtain a certificate from the proper corporate officer to the effect that he had acquired certain shares of stock from a certain person or per-

[1] Sec. 12. The president and secretary of every corporation, organized under the provisions of this act, shall annually make a certificate showing the condition of the affairs of such corporation, as nearly as the same can be ascertained, on the first day of January or July, next preceding the time of making such certificate, in the following particulars, viz.: The amount of capital actually paid in; the cash value of its real estate; the cash value of its personal estate; the cash value of its credits; the amount of its debts; the name and number of shares of each stockholder; which certificate shall be deposited on or before the 15th day of February, or of August, with the county clerk of the county in which said corporation transacts its business, who shall record the same at length in a book to be kept by him for that purpose; and whenever any stockholder shall transfer his stock in any such corporation a certificate of such transfer shall forthwith be deposited with the county clerk, as aforesaid, who shall note the time of said deposit, and record it at full length in a book to be kept by him for that purpose; and no transfer of stock shall be valid as against any creditor of such stockholder until such certificate shall have been deposited.

sons, and cause the same to be deposited with the county clerk as one of his muniments of title. The object of the legislature in requiring the county clerk to receive and record semiannual reports from the officers of corporations, showing their financial condition and who were their shareholders, and to register transfers of stock made in the meantime in a book kept for that purpose, would seem to have been to provide a convenient record which might be consulted for the purpose of taxation, or for the purpose of ascertaining who had control of a corporation and were responsible for its management, or who might be proceeded against as shareholders to enforce a stock liability in case a corporation became insolvent. All of these objects will be substantially subserved by holding that the section of the act now in question has reference to absolute sales of stock, and that it does not comprehend transfers which are effected by a simple indorsement and delivery of stock certificates as collateral security, inasmuch as creditors who thus hold stock in pledge which has not been transferred on the books of the corporation are not entitled to vote the stock, or take part in the management of the corporation, and ordinarily cannot be proceeded against as stockholders to enforce a stock liability. Bank v. Allen, 33 C. C. A. 169, 90 Fed. 545–552; Vowell v. Thompson, 3 Cranch, C. C. 438, Fed. Cas. No. 17,023; Brewster v. Hartley, 37 Cal. 15–25; Cook, Stock & S. § 468, and cases there cited.

Moreover, if the section of the act now under consideration is construed so as to embrace a pledge of stock certificates, as well as absolute sales of stock, such a construction will needlessly embarrass and restrict the circulation of such securities, and prevent their use for legitimate business purposes. It is a well-known fact that stock certificates frequently circulate in places far remote from the home of the corporation by which they were issued, that in all commercial centers they are commonly transferred from hand to hand like negotiable paper, and that they are hypothecated for temporary loans by a simple indorsement and delivery thereof, the latter being perhaps the most common use to which such securities are put. In the great majority of cases, when stock is merely pledged for a loan, no record of the transfer is made on the books of the corporation, and in the judgment of laymen the making of such a record seems to be a needless formality. The trend of modern decisions has been to encourage the free circulation of stock certificates in the mode last indicated, on the theory that they are a valuable aid to commercial transactions, and that the public interest is best subserved by removing all restrictions against their circulation, and by placing them as nearly as possible on the plane of commercial paper. In the state of Massachusetts, where a different rule once obtained and was for a long time adhered to,—Fisher v. Bank, 5 Gray, 373; Newell v. Williston, 138 Mass. 240,—a law has recently been enacted which makes the delivery of a stock certificate, with a written assignment indorsed thereon, effectual to convey a title to the stock as against all parties, thereby conforming the law of that state to the law as it has been established by the great weight of judicial opinion in most of the other states. In view of the premises, we are of opinion that section 1338

does not require transfers of stock to be registered with the county clerk when, as in the case at bar, the transfer consists in a pledge of stock certificates by a simple indorsement and delivery of the same to the pledgee. The statute on which the attaching creditor relies will accomplish the objects which the legislature probably had in view by confining it to cases where stock is sold. It does not in express terms require transfers of stock by way of pledge to be registered with the county clerk, and, in view of the extent to which such a construction of the statute would prevent the use of stock certificates for legitimate business purposes, it ought not to be so construed, without a clear expression that such was the legislative intent.

In conclusion it may be said that it has been very forcibly argued in behalf of the appellant that, even if section 1338 does embrace transfers of stock by way of pledge, and require such transfers to be registered with the county clerk, nevertheless, a holding to that effect would not enable the attaching creditor to appropriate the stock in controversy, inasmuch as actual notice of the pledge of the stock to the appellant was given to the attaching creditor prior to his purchase of the stock at the execution sale. Counsel urge with great force that actual notice to an attaching creditor of a prior pledge or transfer, before the stock is actually sold, should be held tantamount to registration with the county clerk, and a decision by the supreme court of Arkansas (Byers v. Engles, 16 Ark. 560), construing an analogous statute, is cited in support of such contention. However, as we have reached the conclusion that the case at bar is not within the provisions of section 1338, we have not deemed it necessary to consider the latter contention, or to express any opinion thereon. The decree of the circuit court is accordingly reversed, and the case is remanded for a retrial.