O'NEIL v. WOLCOTT MINING CO. et al.

(Circuit Court of Appeals, Eighth Circuit. November 15, 1909.)

No. 3,057.

1. CORPORATIONS (§ 130*)—TRANSFER OF STOCK—JUSTIFICATION OF REFUSAL—ADVERSE CLAIM OR PROTEST INSUFFICIENT—FACTS ESTABLISHING REASONABLE DOUBT OF RIGHT ESSENTIAL.

The existence of facts known to the corporation, which at least raise a reasonable doubt of the right of a demandant who presents a clear prima facie case for a transfer, are requisite to justify a refusal of his request by the corporation.

An adverse claim or a protest is insufficient unless supported by facts which show some reasonable probability that it is well founded.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 488, 489; Dec. Dig. § 130.*]

2. CORPORATIONS (§ 130*)—DUTY TO TRANSFER IMPOSED ON CORPORATION BY REQUEST OF VENDOR AND PURCHASER BEFORE CONTRACT OF SALE IS COMPLETE.

The request of a purchaser and an intermediate owner, parties to a contract of sale, accompanied with the certificate properly assigned by the stockholder of record, as effectually imposes the duty upon the corporation to transfer the stock where the transfer is a condition of the performance of the contract of sale as a request by the transferee after the sale is completed.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 488, 489; Dec. Dig. § 130.*]

3. CORPORATIONS (§ 141*)—ESTOPPEL—UNREGISTERED ASSIGNMENTS OF STOCK ESTOP ASSIGNORS ALTHOUGH STATUTES REQUIRE TRANSFERS ON CORPORATION BOOKS.

Notwithstanding provisions in statutes, charters, or by-laws to the effect that transfers of stock shall be void unless made on the books of corporations, stockholders are estopped by their delivery of certificates of their stock indorsed with blank assignments and powers of attorney from claiming any title to or interest in their stock as against bona fide purchasers thereof from those to whom such stockholders have delivered such certificates.

Section 508, Mills' Ann. St. Rev. Supp. Colo., is subject to this rule.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 477; Dec. Dig. § 141.*]

4. CORPORATIONS (§ 130*)—DUTY TO TRANSFER STOCK—FACTS—CONCLUSION.

A certificate of stock in a corporation was issued to W. in 1890. He indorsed upon it a blank assignment and delivered it to D., who in 1905 contracted to sell it to C. for $2,000. D. delivered the certificate to C., who paid $2,000 to F., the mutual agent, therefor, and D. and C. agreed that F. should cause the stock to be transferred by the corporation to C., and upon receipt of the return certificate should deliver it to her and pay the $2,000 to D. F. forwarded the original certificate properly indorsed for transfer to C. to the corporation and requested that the transfer be made; but the corporation refused to make it because all dividends on the stock prior to the contract of sale had been paid to W., in whose

name it stood upon the books of the corporation, and because in 1890 or 1891 W. had stated to the corporation that he had lost some of his stock and had instructed it not to transfer any stock in his name without his knowledge and approval.

*Held*, the purchaser C. presented to the corporation a clear right to a transfer of the stock, and the payment of the dividends to W. and his ancient claim and protest constituted no justification for a refusal by the corporation to make the transfer.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 488, 489; Dec. Dig. § 130.*]

5. APPEAL AND ERROR (§ 747*)—CROSS-ERRORS NOT ASSIGNABLE—DEFEND-ANTS CANNOT ASSAIL DISMISSAL FOR DEFECT OF PARTIES.

An appellee or a defendant in error who takes no appeal or writ of error himself cannot, by assigning cross-errors, or by brief or argument, confer jurisdiction upon a federal appellate court to consider, review, or decide rulings against him in the court below. Cross-errors are not assignable in the national courts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3054; Dec. Dig. § 747.*]

6. JUDGMENT (§ 251*)—GENERAL DECREE OF DISMISSAL NOT SUSTAINABLE BY MATTER IN ABATEMENT.

A general decree that the bill be dismissed, which does not clearly show that it rests upon some matter in abatement which prevents it from barring future actions upon the same cause, cannot be sustained by the sufficiency of the proof of the matter in abatement, where there are pleas in bar, because the legal effect of the decree is to sustain the latter and to work a complete estoppel of subsequent suits upon the same cause.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 437; Dec. Dig. § 251.*]

7. EQUITY (§ 94*) — ABSENCE OF "INDISPENSABLE PARTIES" ONLY FATAL TO THE JURISDICTION OF FEDERAL COURTS.

It is the absence of indispensable parties only that is fatal to the jurisdiction of the federal courts.

An "indispensable party" is one who has such an interest in the subject-matter of the controversy that a final decree between the parties before the court cannot be made without injuriously affecting his interest or leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience.

W. and D. were not such parties in this case.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 246, 252; Dec. Dig. § 94.*

For other definitions, see Words and Phrases, vol. 4, p. 3559.]

8. COURTS (§ 312*)—FEDERAL COURTS—COLLUSION TO INVOKE JURISDICTION—FICTITIOUS TRANSFERS, NOT THE MOTIVE OR PURPOSE TO INVOKE JURISDICTION BY REAL TRANSFERS, OBNOXIOUS TO THE ACT OF 1875.

The fact that the purpose to bring a cause of action within the jurisdiction of a federal court is the motive which induces a gift or a sale, and a conveyance of a cause of action, or of the property out of which the cause of action arises, does not deprive the assignee of his right to invoke the jurisdiction of that court to determine the cause, provided the transfer was real and absolute.

It is sham or fictitious transfers which colorably place titles and rights in assignees to enable the latter to maintain suits in the federal courts for the benefit of the assignors that are obnoxious to Act March 3, 1875, c. 137, 18 Stat. 470, 472 (U. S. Comp. St. 1901, pp. 508, 511), and not the motive or purpose of real transfers.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 865; Dec. Dig. § 312.*]

(Syllabus by the Court.)

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the Circuit Court of the United States for the District of Colorado.

Bill by H. M. O'Neil against the Wolcott Mining Company and others. Decree for defendants, and complainant appeals. Reversed and remanded.

The complaint in this case is that at the final hearing the court dismissed the bill of the appellant, which was exhibited to obtain a transfer to the complainant upon the books of the Wolcott Mining Company of 3,000 shares of its capital stock. The mining company was organized about 1890, and it had a capital stock of 100,000 shares of a par value of $1 per share. It issued a certificate for 3,000 of these shares to A. Wolcott. He indorsed upon this certificate a blank assignment and power of attorney to transfer the stock and delivered it to S. Delamater. The business of the corporation was conducted and its corporate books were kept in the state of Colorado, while Wolcott was of Indiana and Delamater of Illinois. On the 9th day of September, 1905, at Denver, Delamater exhibited to John K. Carleton, the agent for his wife, L. B. Carleton, and to W. F. Ford, a broker, and the agent of both Delamater and Mrs. Carleton in this transaction, this certificate of stock bearing the written assignment and power of attorney of A. Wolcott. Delamater represented to them that he was the owner of the stock, that the assignment and power of attorney were valid, and that the stock would be transferred upon the books of the corporation upon request; and in reliance upon this representation Mrs. Carleton, through J. K. Carleton, her agent, and Delamater, agreed that Mrs. Carleton would buy the stock of Delamater, that it should be assigned and transferred to her on the books of the company, that she would pay him $2,000 therefor, that the certificate should be immediately assigned to L. B. Carleton, that the certificate so assigned and the $2,-000 should be deposited with Ford, the broker, who should send the certificate to the office of the company and have the stock transferred to Mrs. Carleton, that on the receipt of the certificates issued to her he should deliver them to Carleton and pay the $2,000 to Delamater, and that if the stock should not be transferred the original certificate should be returned to Delamater. This agreement was performed by all the parties to it. Delamater delivered the certificate of stock to Carleton, who deposited it with Ford, and Carleton paid the $2,000 for it to Ford for his wife, and Ford still holds the money for Delamater. At the request of Delamater and Carleton, the name of Mrs. Carleton was written into the blank assignment, and Ford then sent the certificate to the company and requested on behalf of both Delamater and Mrs. Carleton that the stock be transferred to her. The company refused to transfer it because 13 years before the date of the demand A. Wolcott had notified the corporation that he had lost some of his stock and had instructed it not to transfer any that stood in his name without consulting him and securing his approval. On September 14, 1905, after the company had declined temporarily to transfer the stock, Delamater notified Ford not to pay the $2,000 back to Mrs. Carleton, but to hold it for him, and that he should hold Ford responsible for it. But on September 27, 1905, he notified Ford that he withdrew all offers to have the stock transferred and on the same day he wrote to the secretary of the company that, as the stock was claimed by A. Wolcott and he had arranged with Wolcott that the latter might keep the stock, he authorized the secretary to deliver it to him, or to John A. Ewing, his attorney. Thereupon the secretary, without any notice to Ford or Mrs. Carleton, delivered the certificate and the assignment which he had received from Ford to W. W. Charles, the agent of A. Wolcott, who sent it to the latter in Indiana. When the secretary received the certificate on September 11, 1905, he wrote Ford that he would be obliged to refer it to E. H. Wolcott, who was the son of A. Wolcott, and the president of the company before the transfer was made, that aside from this A. Wolcott claimed that he had lost some stock and he desired to communicate with him before the transfer. But he never did communicate with A. Wolcott because the latter was incapacitated to transact business by his age, and, although he notified his son E. H. Wolcott, there is no evidence in the record that the latter made any claim to the stock on

behalf of his father or otherwise. The defendant did not call as witnesses E. H. Wolcott, or Delamater, or Charles, and it did not present any competent evidence that either A. Wolcott, or E. H. Wolcott, had any prior right to the 3,000 shares of stock here in issue at the time Mrs. Carleton demanded the transfer of the stock to herself, and the corporation refused to transfer it and delivered the certificate to Charles.

Harvey Riddell, for appellant.

John A. Ewing and Charles Cavender, for appellees.

Before SANBORN and VAN DEVANTER, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

SANBORN, Circuit Judge. The salient feature of this case is that the corporation which received from the mutual agent of the vendor and purchaser the certificate of the stock here in question properly indorsed for transfer and a regular request from the registered stockholder, Wolcott, and from the intermediate vendor, Delamater, and the purchaser, Mrs. Carleton, to transfer it to her, refused to make the transfer and delivered the certificate and the assignment to the agent of A. Wolcott without the knowledge or consent of Mrs. Carleton, the purchaser, who had paid $2,000 for it, or of the mutual agent of the vendor and purchaser from whom the corporation received it.

Why was it not the duty of the company to transfer the stock to Mrs. Carleton upon the joint request of the original stockholder, the vendor, and the purchaser, and upon the presentation of the certificate properly indorsed for transfer? Counsel answer because the sale was not complete, but was conditional on the transfer of the stock, and because the records of the corporation disclose the facts that the stock had been issued to A. Wolcott about 1890, that the dividends had been paid to him, and that, 13 years before, he had notified it that he had lost some of his stock and had requested that none of the stock standing in his name should be transferred without consulting him and obtaining his approval. But a completed sale was not indispensable to Mrs. Carleton's right to a transfer of the stock. There was a valid contract of sale between her and Delamater and a legal request for the transfer by the original stockholder and by both the vendor and the purchaser, and such a request as effectually imposes the duty upon the corporation to make the transfer as a request from the purchaser after a perfected sale. A request by the vendor and purchaser of stock for its transfer upon the books of the corporation as effectually imposes the duty upon the corporation to transfer it when it is made in performance of a contract of sale whose completion is conditioned by the transfer as when it is the result of a completed sale. State ex rel. Townsend v. McIver, 2 S. C. 25, 45, 46; Cook on Corporations, §§ 384, 386; Webster v. Upton, 91 U. S. 65, 71, 23 L. Ed. 384; Johnston v. Laflin, 103 U. S. 800, 804, 26 L. Ed. 532; Paine v. Hutchinson, 3 L. R. Ch. App. 388.

Again, the stock was actually sold to Carleton for his wife, and she actually paid the purchase price to Ford for Delamater. It is true that the vendor and purchaser agreed that their agent, Ford, should procure its transfer upon the books of the corporation, and that he should hold the purchase money until the stock was transferred and

the certificates were returned, should then deliver the latter to Mrs. Carleton and pay the money to Delamater, and that "in case stock is not transferred the above contract is canceled and stock to be returned to Mr. Delamater." But the true meaning of the clause in quotations was not that the agreement should be annulled if the transfer was prevented by the illegal acts or omissions of Delamater, or of the corporation, but that it should be canceled only in case the vendor and the purchaser were not legally entitled to the transfer of the stock upon the presentation to the corporation of their joint request together with the certificate and the assignment and power of attorney of the original stockholder, A. Wolcott, indorsed thereon. As this right to the transfer existed, and as the purchaser has never surrendered it, the contingency on which the contract of sale might have become void has never arisen, and the agreement and the sale remained in force.

Did the facts that 13 years before the demand of the transfer was made A. Wolcott had given notice that he had lost some of his stock and had requested the corporation not to transfer any that stood in his name without notice to him and his approval relieve the corporation of its duty to make this transfer? A blank assignment and power of attorney to transfer stock indorsed upon the certificate thereof estop the transferror from claiming any further title to or interest in the stock as against subsequent bona fide transferees thereof, although the transfer is not recorded in the books of the corporation. Cook, in his work on Corporations, says that there is no case which denies this principle of law. 2 Cook on Corporations, § 378; Masury v. Arkansas National Bank, 35 C. C. A. 476, 478, 93 Fed. 603, 605; Moore v. Metropolitan Bank, 55 N. Y. 46, 47, 14 Am. Rep. 173; McNeil v. Tenth National Bank, 46 N. Y. 329, 7 Am. Rep. 341; Zulick v. Markham, 6 Daly (N. Y.) 129, 133; Supply Ditch Company v. Elliott, 10 Colo. 327, 333, 15 Pac. 691, 3 Am. St. Rep. 586. The reason for this rule is that it would be contrary to justice and good conscience to permit the original owner to assert title against an innocent purchaser from one clothed by the original owner with all the indicia of ownership and power of disposition.

There is a section of the statutes of Colorado which relates to the records that corporations of that state are required to keep of their capital stock and of its transfer which contains this clause:

"And no transfer of stock shall be valid for any purpose whatever except to render the person to whom it shall be transferred liable for the debts of the company according to the provisions of this act, unless it shall have been entered therein, as required by this section, within sixty days from the date of such transfer." Mills' Ann. St. Rev. Supp. § 508.

But the effect of this provision and the intent of the Legislature in enacting it were not to prescribe an exclusive method whereby a stockholder might divest himself of his title, or might assign it to a third party, but to provide a means of transfer and a record thereof which should be effectual and controlling between the corporation and its stockholders in matters relating to the internal management of the corporation and which would protect transferees against creditors of transferrors and other third parties claiming title. The rule is too

firmly established and is supported by too great a weight of authority to be avoided by anything less than an express legislative repeal that notwithstanding provisions of this nature in general statutes, in charters, and in by-laws of corporations, stockholders may estop themselves conclusively from claiming any interest in or lien upon their stock as against subsequent bona fide purchasers and may divest themselves of all title to it by unregistered assignments thereof. Masury v. Arkansas National Bank, 35 C. C. A. 476, 478, 93 Fed. 603, 605; Johnston v. Laflin, 103 U. S. 800, 804, 26 L. Ed. 532; Cook on Corporations, § 378, and cases there cited; Bank of Commerce v. Bank of Newport, 63 Fed. 898, 900, 11 C. C. A. 484, 486; Horton v. Mercer, 71 Fed. 153, 155, 18 C. C. A. 18; 1 Morawetz on Private Corporations, § 197. Moreover, this rule of law is not only reasonable but almost necessary to the facile transaction of commercial business in this country. While certificates of stock are not negotiable in the strict sense of the law merchant, they are negotiable in fact. Thousands of them are bought and sold throughout the entire nation daily upon blank assignments and powers of attorney without registration of the transfers in reliance upon the rule of law which has been stated. An avoidance of all such assignments not evidenced by the books of the corporation within 60 days after their dates would greatly impede traffic in stocks and would seriously decrease their value. The statutes of the nation and of the other states of the Union do not strike down the rule of law and of commerce which has been stated, and it cannot be that the Legislature of Colorado either intended to, or did by this statute, single out the stocks of the corporations of its own state and subject them to so serious a disadvantage in the markets of the world. This conclusion has not been reached without a careful reading of the decision of the Supreme Court of Colorado in Central Savings Bank v. Smith, 43 Colo. 90, 95 Pac. 307, 308; but that decision is not controlling in this case: First, because it was not rendered until after the transaction here in question was had. Burgess v. Seligman, 107 U. S. 20, 33, 2 Sup. Ct. 10, 27 L. Ed. 359; Speer v. Board of Com'rs, 32 C. C. A. 101, 113, 88 Fed. 749, 760; Clapp v. Otoe County, 45 C. C. A. 579, 582, 104 Fed. 473, 476; Westinghouse Air Brake Co. v. Kansas City So. Ry. Co., 71 C. C. A. 1, 10, 137 Fed. 26, 35; Harrison v. Remington Paper Co., 72 C. C. A. 405, 408, 140 Fed. 385, 388, 3 L. R. A. (N. S.) 954; City of Mankato v. Barber Asphalt Pav. Co., 72 C. C. A. 439, 447, 142 Fed. 329, 337. And, second, because the transfer in that case was held void against a creditor, and the statute may have that effect without avoiding assignments from stockholders to third persons as against subsequent innocent purchasers.

A. Wolcott therefore, by his assignment of the certificate in blank and his execution of the blank power of attorney thereon and by the delivery of the certificate thus indorsed to Delamater, was estopped from claiming any interest in or title to the stock here in issue against Mrs. Carleton, who was induced by that assignment and delivery to make the contract to purchase the stock and was persuaded to pay the $2,000 for it. The certificate, the assignment, and the request for the transfer in regular form were presented to the defendant. On their

face they entitle Mrs. Carleton to a transfer of the stock. The legal presumption was that they had been lawfully and honestly made and acquired. The corporation refused to make the transfer, and it thereby took upon itself the burden of proving a justification of its refusal. It proved that dividends on this stock had been paid to Wolcott prior to the contract of sale to Mrs. Carleton. But that fact constituted no defense to the legal demand of Wolcott, Delamater, and Mrs. Carleton that the stock should be transferred to her after the contract. It proved that 13 years before the demand was made upon it Wolcott had told the company that he had lost some of his stock and had instructed it not to transfer any that stood in his name without his approval. But his written assignment of this stock and his written power of attorney and request to transfer it to Mrs. Carleton evidenced the fact that he had not lost this stock, and that he had knowingly assigned it and authorized the transfer of it.

Concede, however, that his ancient request justified the corporation in delaying the transfer of it until it could communicate with him or with his representative and could give him an opportunity to show to the corporation that he had a prior claim to the stock that might prove superior to that of Mrs. Carleton. The burden was then upon his son and representative, E. H. Wolcott, to present such a claim, and the duty was upon the defendant to transfer the stock if no such claim was established. Where the rights of a claimant are reasonably clear, and the corporation suspends action and gives to another an opportunity to establish his opposing claim, and he neither does so before the corporation nor commences any action to prevent the transfer within a reasonable time, it is the duty of the corporation to record the transfer demanded by the first claimant. State ex rel. Townsend v. McIver, 2 S. C. 25, 44. The secretary of the corporation gave notice of the demand for the transfer to E. H. Wolcott, the son and the representative of A. Wolcott, who was incapacitated by age; but neither of them disclosed any probable right or interest in this stock, neither of them proved or even claimed that A. Wolcott had ever lost the stock here in controversy, and the defendant has produced no evidence whatever in this case of any such loss. The result was that there was no proof of any justification or excuse for the defendant's refusal to transfer the stock except A. Wolcott's request 13 years before the demand that none of the stock in his name should be transferred without notice to and approval by him, and this request constituted no justification. Evidence of some adverse title, interest, or lien, that at least raises a substantial doubt of the right of a demandant to a transfer of stock, is indispensable to sustain a refusal to make it. The corporation when it refuses, and upon the trial of the issue the court, must be able to see from the facts established that there is some question to be tried. A mere claim of the stock is not sufficient. State Insurance Co. v. Gennett, 2 Tenn. Ch. R. 82, 84; State ex rel. Townsend v. McIver, 2 S. C. 25, 44. The question was well put by Sir G. Jessel, Master of the Rolls, in Ex parte Sargent, 17 Law Reports Equity Cases, 1873–4, 273, 282, in these words:

"Is it sufficient cause that somebody whose name is on the register gives notice to the company that the transfer is not valid, the transfer being valid

in form? · I cannot hold that to be sufficient cause, because it would come to this, that anybody giving notice would stop a transfer. Then is it sufficient cause if the person who gives the notice turns out to be wrong? The company took no step to ascertain who was in the right, but simply refused to register, and stood on that refusal; in fact, it sided with Mr. Fry, its chairman. Can I say that a company which chooses to refuse a transfer because the chairman says it is wrong, when it is right, is not to bear the costs resulting from that refusal, although it chose to act without getting an indemnity for those costs over and against Mr. Fry? I do not think so."

Any other rule would enable any person to deprive the owner of his stock temporarily by simply giving notice to the corporation that he claimed it and protested against its transfer.

The finding that there was no proof of any excuse for the corporation's refusal except·Wolcott's ancient notice has not been made without a consideration of Delamater's letter to the corporation dated September 27, 1905, wherein he declared that Carleton had not paid anything on account of the stock, and wrote:

"And as the said stock is claimed by A. Wolcott, and as I have arranged with the said Wolcott for him to keep the said stock, I hereby authorize you to deliver the same to the said A. Wolcott, or to his attorney, J. A. Ewing, as I have no further claim thereto."

, But Delamater did not testify that these declarations were true, and, while his admissions against his interest and against the interest of the corporation which attempts to justify under them constitute admissible evidence in favor of the complainant, his statements favorable to himself and the defendant were incompetent evidence against her because they were hearsay and were self-serving statements. Delamater had no power to authorize the delivery of the stock to Wolcott. He was bound by his contract with Mrs. Carleton to cause that stock to be transferred to her, and the corporation was bound by the fact that it had received it from Ford with the request that it be transferred to Mrs. Carleton, to either transfer it or to return it to Ford or to deliver it pursuant to his order.

Nor has the letter of Stickley, the secretary of the company, to Ford on October 7, 1905, been overlooked, in which he wrote that A. Wolcott claimed that he had placed the stock with Delamater "with the distinct understanding when he (Delamater) wanted to dispose of it, that he (Wolcott) was to have the first option at the price which he was willing to sell it for; and the said A. Wolcott stated that he had been ready at all times to give him the money for the stock, but Delamater had never signified his willingness to accept any amount." No one testifies that this was the claim of Wolcott. Even if it were, it would have given him no title to or interest in the stock against Mrs. Carleton and no right to prevent its transfer to her. This claim would have been an acknowledgment that Wolcott delivered the stock and his blank assignment of it to Delamater knowing that Delamater owned the stock and that he had the right to sell it. The "distinct understanding" mentioned did not constitute an agreement for a legal consideration and was void, and, if it had risen to the dignity of a contract, it would have created no title to or lien upon the stock. It would have related to personal property, and its specific performance

could not have been enforced, and Wolcott's only remedy under it after Delamater's contract of sale to Mrs. Carleton would have been an action for damages against him for its breach. And, finally, as this and every other claim of Wolcott was unknown to Mrs. Carleton when she paid the $2,000 for the stock, he was estopped by his assignment of the stock and delivery of the certificate from making this or any other claim to the stock as against her.

Our conclusion is that Mrs. Carleton's right to a transfer of the stock was clearly proved to the corporation and to the court, that no facts were presented to either that could have raised any reasonable doubt or question of that right, and that the action of the corporation in refusing to make the transfer and in delivering the certificate to Charles without the order of Ford, from whom it received it, was of a partisan character and violative of its legal duty. Hinckley v. Pfister, 83 Wis. 64, 85, 53 N. W. 21.

The defendants alleged in their answer, and this averment was denied by the replication, that A. Wolcott, S. Delamater, W. W. Charles, and E. A. Frazier were proper and necessary parties to this suit, and counsel argue that the decree should be affirmed because they were not made parties. The position is untenable. In the first place, if these persons were indispensable parties, that fact would not sustain, but would reverse, the decree below, and, as the defendants have taken no appeal, they cannot be heard in this court to urge errors which would set aside the result in their favor. They can present contentions that will support the decree and those only. An appellee or a defendant in error who takes no appeal or writ of error himself cannot, by assigning cross-errors, or by brief or argument, confer jurisdiction upon a federal appellate court to consider, review, or decide rulings against him in the court below. Much less can he be heard to challenge rulings that were too favorable to him. Cross-errors are not assignable in the national courts. Bolles v. Outing Co., 175 U. S. 262, 268, 20 Sup. Ct. 94, 44 L. Ed. 156; Cleary v. Ellis Foundry Co., 132 U. S. 612, 611, 10 Sup. Ct. 223, 33 L. Ed. 473; Canter v. American. etc., Ins. Co., 3 Pet. 307, 318, 7 L. Ed. 688; Chittenden v. Brewster, 2 Wall. 191, 196, 17 L. Ed. 839; Loudon v. Taxing District, 104 U. S. 771, 774, 26 L. Ed. 923; The Maria Martin, 12 Wall. 31, 40, 20 L. Ed. 251; Clark v. Killian, 103 U. S. 766, 769, 26 L. Ed. 607; United States v. Blackfeather, 155 U. S. 180, 186, 15 Sup. Ct. 64, 39 L. Ed. 114; The Stephen Morgan, 94 U. S. 599, 24 L. Ed. 266; Building & Loan Ass'n v. Logan, 14 C. C. A. 133, 134, 66 Fed. 827, 828; Guarantee Co. v. Phenix Ins. Co., 124 Fed. 170, 171, 172, 173, 59 C. C. A. 376, 377, 378, 379; Pauly, etc., Mfg. Co. v. Hemphill Co., 10 C. C. A. 595, 600, 62 Fed. 698, 703; Ætna Indemnity Co. v. J. R. Crowe Coal & Mining Co., 154 Fed. 545, 567, 83 C. C. A. 431, 453.

The only decree which the absence of indispensable parties to a suit will sustain is one which dismisses the bill upon that ground without prejudice to another suit against the same defendants and all other indispensable parties upon the same cause of action, while the decree in this case was upon the merits. It rendered the issues res adjudicata and constituted a complete bar to all future suits for a transfer of

the stock. A general decree that the bill be dismissed, which does not clearly show that it rests upon some matter in abatement which prevents it from barring future actions upon the same cause, cannot be sustained by the sufficiency of the proof of the matter in abatement, where there are pleas in bar, because the legal effect of the decree is to sustain the latter and to work a complete estoppel of subsequent suits upon the same cause. Hooven, Owens & Rentschler Co. v. John Featherstone's Sons, 49 C. C. A. 229, 233, 111 Fed. 81, 85; Speer v. Board of County Commissioners, 88 Fed. 749, 752, 32 C. C. A. 101, 105; Indian Land & Trust Co. v. Shoenfelt, 135 Fed. 484, 487, 68 C. C. A. 196, 199; House v. Mullen, 22 Wall. 42, 46, 22 L. Ed. 838; Four Hundred and Twenty Mining Co. v. Bullion Mining Co., 9 Fed. Cas. 592, 599 (No. 4,989), 3 Sawy. 634; Sheldon v. Edwards, 35 N. Y. 279, 287, 288; United States v. Pine River Logging & Imp. Co., 78 Fed. 319, 325, 24 C. C. A. 101, 107.

In the second place, it is the absence of indispensable parties only that necessarily compels the abatement of a suit in the national courts. The court below necessarily found, when it entered its general decree of dismissal, that the persons named in the answer were not such parties, and the evidence is insufficient to warrant the reversal of that finding. An "indispensable party" is one who has such an interest in the subject-matter of a controversy that a final decree between the parties before the court cannot be made without injuriously affecting his interest or leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience. Every other party who has any interest in the controversy or the subject-matter which is separable from the interest of the parties before the court, so that it will not be immediately affected by a decree between them, is a proper party. Rev. St. §§ 737, 738 (U. S. Comp. St. 1901, p. 587); Equity Rule, 47; Sioux City Terminal R. & W. Co. v. Trust Co. of N. A., 82 Fed. 124, 27 C. C. A. 73, 75; Chadbourne v. Coe, 2 C. C. A. 327, 328, 329, 51 Fed. 479, 480, 481; Rogers v. Penobscot Mining Co., 154 Fed. 606, 616, 83 C. C. A. 380, 390, and cases there cited; Lawrence v. Southern Pacific Co. (C. C.) 165 Fed. 241, 243.

This was not a suit to enforce specific performance of an agreement of sale, or to quiet title, or to determine conflicting claims to the title or the possession of the stock. It was a suit to compel the corporation to discharge its duty to transfer the stock to Mrs. Carleton, and it was nothing more. The corporation was the only indispensable defendant because a decree between the complainant and the corporation cannot injuriously affect the interests of any of the persons named in the answer and it cannot leave the controversy in such a situation that its final determination may be inconsistent with equity and good conscience, because those persons are not parties to, and they will not be bound by, that decree. They will be as free after, as before, the decree, to enforce any rights they may have to the stock or to a record of it in their names, both against the complainant and against the corporation.

There is another reason why those persons were not indispensable parties, and that is because the complainant denied, and the proof failed

to show, that they were such parties. The burden was upon the defendants to make such proof, and in this court, after the adverse finding of the chancellor upon this issue, the burden is upon them to present proof of sufficient cogency to overcome the legal presumption that that finding was right. The proof is that A. Wolcott had estopped himself as against the complainant from claiming any interest in this stock or in its transfer and had died before the answer was interposed, that S. Delamater had estopped himself from claiming any interest in the stock or in the transfer against the complainant by his contract of sale, by his delivery of the stock to Mrs. Carleton for her $2,000, and by his subsequent written disclaimer, that Charles was the agent of Wolcott, and hence without interest in the controversy or the property, and there was no evidence whatever about Frazier. The result is that the decree of dismissal cannot be sustained, nor can a decree for the complainant be avoided on the ground that there was a defect of parties to this suit.

Finally, the defendants insist that the bill was properly dismissed because, as they claim, Mrs. Carleton, a resident and citizen of the same state as the defendants, is the real party in interest in the suit, the complainant paid no consideration for the assignment to her, and it was made for the sole purpose of creating a cause cognizable by the national courts. But the record fails to sustain these claims. It contains convincing evidence that Mrs. Carleton made and delivered to the complainant a written assignment of all her right, title, and interest in the 3,000 shares of stock in November, 1905, and that therefor the complainant gave to her assignor her promissory note payable on demand upon condition that Mrs. Carleton should not discount the note, and that if the stock should not be transferred to the complainant Mrs. Carleton should return the note. There is nothing in this sale substantially different in legal effect from a sale of stock for cash with an express or implied warranty of title. In the latter case, if the title fails, and the purchaser cannot secure a transfer of the stock upon the books of the corporation, the seller must return the consideration with interest, and in the case at bar the same result will follow from the same cause. But in each case the title to the stock and the right to the transfer vest absolutely in the vendee at the time of the sale. If the title proves valid, and the transfer is enforceable, the consideration remains the property of the vendor. If the property sold was, at the time of the sale, or thereafter becomes, worth more or less than the purchase price, the gain or the loss is the vendee's. The evidence in the record established a valid sale and assignment to the complainant of the stock and of the right to its transfer for a valuable and lawful consideration.

The fifth section of the act of March 3, 1875 (18 Stat. 470, 472, c. 137 [U. S. Comp. St. 1901, pp. 508, 511]), which has never been superseded (Lake County Commissioners v. Dudley, 173 U. S. 243, 251, 19 Sup. Ct. 398, 401, 43 L. Ed. 684), provided:

"That if, in any suit commenced in a Circuit Court or removed from a state court to a Circuit Court of the United States, it shall appear to the satisfaction of said Circuit Court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially

involve a dispute or controversy properly within the jurisdiction of said Circuit Court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a cause cognizable or removable under this act, the said Circuit Court shall dismiss the suit or remand it to the court from which it was removed as justice may require, and shall make such order as to costs as shall be just."

The counsel for the defendants contend that the complainant was improperly and collusively made a party to this suit for the purpose of bringing the cause of action it presents within the jurisdiction of the court below. But the transfer of the stock and of the cause of action to the complainant was real and absolute, and, even if one of the motives which induced Mrs. Carleton to sell and the complainant to buy had been to enable the purchaser to invoke the jurisdiction of the federal courts, that fact alone would not have defeated the purchaser's suit. Mrs. Carleton had the right to make a gift or a sale of her stock and of her cause of action to the complainant from that very motive, and if the gift or sale was genuine, and the title and the beneficial ownership vested absolutely in the assignee, as they did, the latter could lawfully maintain her suit and enforce her rights.

The fact that the purpose to bring a cause of action within the jurisdiction of a federal court is the motive which induces a gift or a sale, and a conveyance of a cause of action or of the property out of which the cause of action arises, does not deprive the assignee of his right to invoke the jurisdiction of that court to determine the cause, provided the transfer was real and absolute. McDonald v. Smalley, 1 Pet. 620, 623, 7 L. Ed. 287; Smith v. Kernochen, 7 How. 198, 215, 12 L. Ed. 666; Lehigh Mining & Mfg. Co. v. Kelly, 160 U. S. 327, 336, 16 Sup. Ct. 307, 40 L. Ed. 444; Dickerman v. Northern Trust Company, 176 U. S. 181, 191, 20 Sup. Ct. 311, 44 L. Ed. 423; South Dakota v. North Carolina, 192 U. S. 286, 310, 311, 24 Sup. Ct. 269, 48 L. Ed. 448.

It is sham or fictitious transfers which colorably place titles and rights in assignees to enable them to maintain suits in the federal courts for the benefit of the assignors that are obnoxious to the act of March 3, 1875, and not the purpose or motive of real transfers. The record fails to establish that the assignment to the complainant was either sham, fictitious, or colorable, and the objection to it must be overruled.

The decree below must be reversed, and the case must be remanded to the Circuit Court, with directions to enter a decree in favor of the complainant for the relief prayed in the bill, including a recovery from the defendant corporation, but not from the other defendants, of the dividends which have been declared upon the 3,000 shares of stock in controversy since September 27, 1905, and interest thereon from the times when they were respectively payable; and it is so ordered.